UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

LAW OFFICES OF OLIVER ZHOU,

                Plaintiff,

       v.

CITI BANK, N.A. and
PNC BANK, N.A.,

            Defendants.

------------------------------------------------------------ X

Case No. 15-cv-5266 (ER)

## DEFENDANT PNC BANK N.A.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT PURSUANT TO FRCP 12(b)(6)

Noreen A. Kelly
Aaron F. Jaroff
nkelly@mcguirewoods.com
ajaroff@mcguirewoods.com
McGuireWoods LLP
1345 Avenue of the Americas, 7th Floor
New York, New York 10105
(212) 548-2100

*Attorneys for Defendant PNC Bank, N.A.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 2

ARGUMENT ....................................................................................................... 4

    A.    THE COMPLAINT FAILS TO ALLEGE A NEGLIGENCE CLAIM AGAINST PNC ................................................................................. 5

        1.    PNC's Duties Are Governed by the New York Uniform Commercial Code .......................................................... 5

        2.    The Complaint Does Not Allege That PNC Breached its Duties Under the New York Uniform Commercial Code ................... 7

    B.    THE COMPLAINT PROVIDES NO ALLEGATIONS TO SUPPORT AN AIDING AND ABETTING CLAIM AGAINST PNC ...................... 11

CONCLUSION .................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)............................................................................................4

*Bank of Nova Scotia v. HSBC Bank USA,*
  No. 04-cv-1662, 2005 WL 1423362 (S.D.N.Y. June 16, 2005) ...............................7

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)............................................................................................4

*Cruz v. TD Bank, N.A.,*
  855 F. Supp. 2d 157 (S.D.N.Y. 2012).................................................................4, 11

*Empire City Capital Corp. v. Citibank, N.A.,*
  No. 10-cv-2601, 2011 WL 4484453 (S.D.N.Y. Sept. 28, 2011) ...............................6

*Fischer & Mandell LLP v. Citibank, N.A.,*
  632 F.3d 793 (2d Cir. 2011)................................................................................6

*Greenburg, Trager & Herbst, LLP v. HSBC Bank USA,*
  958 N.E.2d 77 (N.Y. 2011).........................................................................*passim*

*Hamilton v. Beretta U.S.A. Corp.,*
  750 N.E.2d 1055 (N.Y. 2001)..............................................................................5

*Kaufman v. Cohen,*
  760 N.Y.S.2d 157 (N.Y. App. Div. 2003) ...........................................................12

*Kevin Kerveng Tung, P.C. v. JP Morgan Chase & Co.,*
  No. 11885/2011, 2011 WL 6989895 (N.Y. Sup. Ct. Oct. 28, 2011) .............*passim*

*Kevin Kerveng Tung, P.C. v. JP Morgan Chase & Co.,*
  963 N.Y.S.2d 145 (N.Y. App. Div. 2013) .....................................................*passim*

*Kolbeck v. LIT Am., Inc.,*
  939 F. Supp. 240 (S.D.N.Y. 1996), *aff'd* 152 F.3d 918 (2d Cir. 1998) ...................13

*Lerner v. Fleet Bank, N.A.,*
  459 F.3d 273 (2d Cir. 2006)........................................................................*passim*

*Margot J. Garant, Inc. v. Suffolk County Nat'l Bank,*
  No. 66873/2014, 2015 WL 669452 (N.Y. Sup. Ct. Feb. 11, 2015)........................6, 7

*Nelson v. Publishers Circulation Fulfillment, Inc.,*
  No. 11-cv-1182, 2012 WL 760335 (S.D.N.Y. Mar. 7, 2012)....................................5

*Renner v. Chase Manhattan Bank, N.A.,*
  85 F. App'x 782 (2d Cir. 2004) ........................................................11

*Scolnick v. Bank One, N.A.,*
  No. 601035/2010, 2014 WL 957005 (N.Y. Sup. Ct. Mar. 7, 2014) ........................................7

*Stephenson v. PricewaterhouseCoopers, LLP,*
  482 F. App'x 618 (2d Cir. 2012) ........................................................11

*Tzaras v. Evergreen Int'l Spot Trading, Inc.,*
  No. 01-cv-10726, 2003 WL 470611 (S.D.N.Y. Feb. 25, 2003) ........................................7, 10

## STATUTES

N.Y. U.C.C. § 3-406 ........................................................7

N.Y. U.C.C. § 4-104(h) ........................................................6

N.Y. U.C.C. § 4-105(b) ........................................................5

N.Y. U.C.C. § 4-301(1) ........................................................6

N.Y. U.C.C. § 4-302(a) ........................................................6

## RULES

FED. R. CIV. P. 8(a) ........................................................11

FED. R. CIV. P. 9(b) ........................................................4, 11, 12

FED. R. CIV. P. 12(b)(6) ........................................................1, 4

Defendant PNC Bank, N.A. ("PNC") by its undersigned counsel, respectfully submits this memorandum of law in support of its motion to dismiss all of Plaintiff's claims against PNC with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This case involves an example of a pervasive scheme perpetrated against unsuspecting law firms by purported "clients," who promise large fees in exchange for the deposit of a cashier's check followed by immediate wire transfers to specified payees.  At the end of these schemes, which have been well-publicized within the legal community, the law firm discovers that the cashier's check was a fake, and that it now has a large overdraft, having relied on the provisional credit provided by its bank when the alleged cashier's check was deposited.  That is exactly what happened here.

Plaintiff had the misfortune of receiving a single forged check from a  purported client.  Guided by "urgent" instructions from the client, Plaintiff deposited the check into its trust account and wired the provisional funds to a third-party prior to the final settlement of the check, only to realize days later that it was the victim of a fraud perpetrated by its "client."  However unfortunate, Plaintiff has chosen not to bring suit against the client responsible for the fraud, but instead seeks to recover against its bank (Defendant Citibank, N.A., hereinafter "Citibank") and PNC, whose only connection to this series of events is that the forged instrument purported to be a PNC cashier's check – which PNC rejected upon presentation.

Plaintiff is not a customer of PNC and did not directly interact with PNC during the events that gave rise to its claims.  Under applicable law, PNC's only obligation was to promptly review the check after it was received from Plaintiff's bank (Citibank) and either (i) pay the check or (ii) timely return it as counterfeit.  Despite the many frivolous and unsupported

1

allegations that Plaintiff makes about PNC's failure to prevent its checks from being forged and failing to "disclose the existence of an epidemic of forged and counterfeit PNC bank instruments," at no point does Plaintiff claim that PNC breached its duty to timely pay or return the check after it was presented for payment. As New York courts have repeatedly held when examining claims nearly identical to those at issue here, the absence of this allegation is fatal to Plaintiff's claims against PNC.

## STATEMENT OF FACTS

Plaintiff alleges the following relevant facts regarding PNC in its Complaint:

On June 17, 2013, Plaintiff received a "PNC Bank Cashier's check numbered 533726 with routing number 071921891 in the amount of $297,500.00 drawn on defendant PNC Bank," which it deposited into its IOLA Attorney Trust account with Citibank on June 18, 2013. Compl. ¶ 3. Citibank accepted deposit of the check and informed Plaintiff that the funds from the check had been made available, at which point Plaintiff, acting pursuant to instructions from its client, transferred $287,450.00 from its account to a third-party account in Japan. Compl. ¶ 12. On June 24, 2013, Plaintiff was informed that there were insufficient funds in its Citibank account to honor an unrelated payment. Compl. ¶ 16. After contacting Citibank, Plaintiff learned that the purported PNC cashier's check had been returned to Citibank as a forged or counterfeit instrument. Compl. ¶¶ 16-17. On June 26, 2013, Plaintiff received written confirmation from Citibank, dated June 20, 2013, that the check had been returned by PNC as "altered/fictitious." Compl. ¶ 20; Compl. Ex. 5. Plaintiff's attempts to cancel the wire transfer were unsuccessful, resulting in a loss of $287,450.00. Compl. ¶¶ 18, 49, 61; Compl. Ex. 4 at 1.

Plaintiff claims that PNC is responsible for this loss, alleging that it was negligent by failing to:

- know that forged or counterfeit PNC checks or bank instruments "had been issued, delivered, or attempted to be deposited" (Compl. ¶ 21);

- know that the routing number and signature on the forged check at issue was the same or similar to those of unspecified "prior instances of unauthorized signatures" on other PNC instruments (Compl. ¶ 22);

- take steps to prevent an "unidentified person" from using incorrect routing numbers and unauthorized signatures to create forged or counterfeit instruments (Compl. ¶ 23);

- warn the public and other banking institutions of the "hidden danger" that an "unidentified person" was using unauthorized signatures to forge PNC checks and that there was an ongoing "epidemic" of forged and counterfeit PNC instruments prior to the events at issue  (Compl. ¶¶ 24-25; 57);

- "investigate the issuance of forged and counterfeit" PNC instruments or to "root out its check forgery and secure its control over the Cashier's check inventory" (Compl. ¶ 27);

- control its bank instruments, which subjected them to theft and forgery (Compl ¶ 46);

- implement effective mechanisms to "monitor the whereabouts and status" of PNC bank instruments, as well as the allegedly criminal acts of PNC employees (Compl. ¶ 47); and

- adopt effective procedures for protecting Plaintiff and the public from forged and counterfeit instruments, despite encountering incidents of missing cashier's checks and potential forgeries "from time to time" (Compl. ¶¶ 54-56).

Plaintiff also appears to allege, almost as an afterthought, that PNC aided and abetted the underlying fraud perpetrated by its purported client by failing to prevent its cashier's checks from being stolen or forged. Compl. ¶¶ 46-49. Despite this litany of alleged obligations of PNC to Plaintiff and to the public at large, Plaintiff does not claim that it was ever a customer of PNC or that it had a relationship of any kind with PNC, nor that PNC failed to promptly pay or return the check after it was presented for payment by Citibank.

## ARGUMENT

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Well-pleaded factual allegations are to be accepted, but a complaint stating grounds for valid relief cannot rely on mere conclusory statements and legal conclusions, which "are not entitled to the assumption of truth." *Id.* at 678-680 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice."). A complaint is insufficient to state a claim where, as here, it is supported only by "naked assertions devoid of further factual enhancement" that fail to establish that a defendant is liable for the alleged conduct. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). Finally, any factual allegations cited as the basis for a plaintiff's claim "must be enough to raise a right to relief about the speculative level." *Twombly*, 550 U.S. at 555.

To the extent the Complaint contains allegations of fraud or aiding and abetting fraud, Plaintiff must meet the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which mandates that the claim state "with particularity the circumstances constituting the fraud." FED. R. CIV. P. 9(b); *see Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292-93 (2d Cir. 2006) (noting that Rule 9(b) applies to claims of aiding and abetting fraud). In order to meet this standard, a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Cruz v. TD Bank, N.A.*, 855 F. Supp. 2d 157, 176 (S.D.N.Y. 2012) (quoting *Lerner*, 459 F.3d at 290).

## A.     THE COMPLAINT FAILS TO ALLEGE A NEGLIGENCE CLAIM AGAINST PNC

Plaintiff's causes of action against PNC essentially allege that PNC "by its negligence" caused Plaintiff's loss by failing to prevent its cashier's checks from being lost or stolen and failing to notify the public at large that certain of its checks were missing, stolen, or forged. Compl. ¶¶ 45-61.  As a result, Plaintiff contends that PNC breached a duty owed to Plaintiff, "its customers, holders in due course, and to the public," which contributed to the eventual forgery at issue and resulted in Plaintiff's loss.  Compl. ¶¶ 46-47, 59.

To state a claim for negligence in New York, "a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Lerner*, 459 F.3d at 286 (quotation and citation omitted).  The plaintiff "must show that a defendant owed not merely a general duty to society but a specific duty to him or her, for without a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm." *Nelson v. Publishers Circulation Fulfillment, Inc.*, No. 11-cv-1182, 2012 WL 760335, at *6 (S.D.N.Y. Mar. 7, 2012) (quoting *Hamilton v. Beretta U.S.A. Corp.*, 750 N.E.2d 1055, 1060 (N.Y. 2001)).  Plaintiff's claims against PNC fail for the simple reason that the Complaint does not sufficiently answer "[t]he threshold question in any negligence action . . . does defendant owe a legally recognized duty of care to plaintiff?" *Hamilton*, 750 N.E.2d at 1060.

### 1.     PNC's Duties Are Governed by the New York Uniform Commercial Code

New York courts examining the relationship between payor banks,[1] such as PNC, and noncustomer depositors, such as Plaintiff, have held that the duty owed from the payor to the

---

[1]      A "payor bank" is defined as "a bank by which an item is payable as drawn or accepted," *i.e.* the bank containing the account from which a check is to be paid.  N.Y. U.C.C. § 4-105(b).

depositor is governed solely by Sections 4-301 and 4-302 of the New York Uniform Commercial Code. *See Greenburg, Trager & Herbst, LLP v. HSBC Bank USA*, 958 N.E.2d 77, 83 (N.Y. 2011) ("The duty of a payor bank [in a negligence action] . . . to a non-customer depositor of a check is derived solely from UCC 4-301 and 4-302."); *Kevin Kerveng Tung, P.C. v. JP Morgan Chase & Co. (Tung II)*, 963 N.Y.S.2d 145, 147-48 (N.Y. App. Div. 2013) (same); *see generally Fischer & Mandell LLP v. Citibank, N.A.*, 632 F.3d 793, 801 (2d Cir. 2011) (applying the New York Uniform Commercial Code to negligence claim involving counterfeit checks); *Margot J. Garant, Inc. v. Suffolk County Nat'l Bank*, No. 66873/2014, 2015 WL 669452, at *3 (N.Y. Sup. Ct. Feb. 11, 2015) (noting that "the manner in which checks are processed by banks is governed by the relevant provisions of the UCC"). In pertinent part, Section 4-301 states that:

> (1) Where an authorized settlement for a demand item . . . received by a payor bank . . . has been made before midnight of the banking day of receipt the payor bank may revoke the settlement and recover any payment if before it has made final payment . . . and before its midnight deadline it (a) returns the item; or (b) sends written notice of dishonor or nonpayment if the item is held for protest or is otherwise unavailable for return.

N.Y. U.C.C. § 4-301(1). Section 4-302(a) further elaborates that a payor bank can be liable for an item it receives, but only if it "does not pay or return the item or send notice of dishonor until after its midnight deadline."[2] N.Y. U.C.C. § 4-302(a); *see also Greenberg*, 958 N.E.2d at 83. Thus, the only duty that PNC owed Plaintiff was that it "pay the check, return the check or send notice of dishonor of the check by midnight of the next banking day after receiving the check."[3]

---

[2]   The "midnight deadline" is defined as "midnight on [the] next banking day following the banking day on which [the bank] receives the relevant item or notice or from which the time for taking action commences to run, whichever is later." N.Y. U.C.C. § 4-104(h).

[3]   Although Plaintiff's negligence claims against PNC are governed by the New York Uniform Commercial Code, it is also well-settled that New York follows the "almost universal rule that banks do not owe a common law duty of care to third-party customers." *Empire City Capital Corp. v. Citibank, N.A.*, No. 10-cv-2601, 2011 WL 4484453, at *9 (S.D.N.Y. Sept. 28, 2011) (quotation and citation omitted); *see also Lerner*, 459 F.3d at 286 ("As a general matter,

*Greenberg*, 958 N.E.2d at 83; *Tung II*, 963 N.Y.S.2d at 148; *see also Garant*, 2015 WL 669452, at *3 ("A payor bank must, by its 'midnight deadline' . . . pay the item, . . . return the item or send written notice of dishonor or nonpayment.") (quoting *Greenburg*, 958 N.E.2d at 82).

**2.    The Complaint Does Not Allege That PNC Breached its Duties Under the New York Uniform Commercial Code**

Plaintiff's Complaint is silent as to any cognizable claim against PNC, as it does not, and cannot, allege that PNC failed to comply with its duty to pay or return the check at issue prior to midnight on the day following its receipt.  Rather, Plaintiff simply states that it (i) received a cashier's check purporting to be payable by PNC; (ii) deposited the check into its Citibank account; and (iii) was later informed by Citibank that the check was in fact altered or fictitious and had been returned.  Compl. ¶¶ 3, 16-20.  Plaintiff then futilely attempts to bolster its allegations by elaborating on these facts – which are insufficient to state a claim against PNC – with a series of conclusory, irrelevant, and unsupported statements regarding the alleged "duties" that PNC owed to it and the public at large.[4]  Compl. ¶¶ 46-61.  Yet nowhere in the Complaint is there anything that approaches an allegation sufficient to establish that PNC breached its duty by failing to return the check to Citibank prior to its midnight deadline.  Indeed, the Complaint is

---

banks do not owe non-customers a duty to protect them from the intentional torts of their customers.") (quotation and citation omitted); *Tzaras v. Evergreen Int'l Spot Trading, Inc.*, No. 01-cv-10726, 2003 WL 470611, at *5-6 (S.D.N.Y. Feb. 25, 2003).

[4]    Plaintiff also references N.Y. U.C.C. § 3-406 in apparent support of its negligence claim.  Compl. ¶ 53.  That section of the U.C.C. is inapplicable here and does not remedy the fact that Plaintiff has failed to state a claim against PNC.  First, § 3-406 is a defense that can be asserted to demonstrate that a plaintiff is precluded from bringing a claim against a payor because its own negligence contributed to the alteration or forgery.  N.Y. U.C.C. § 3-406; *Scolnick v. Bank One, N.A.*, No. 601035/2010, 2014 WL 957005, at *8 (N.Y. Sup. Ct. Mar. 7, 2014); *see also Bank of Nova Scotia v. HSBC Bank USA*, No. 04-cv-1662, 2005 WL 1423362, at *4 (S.D.N.Y. June 16, 2005) (noting that a showing of customer negligence shifts the risk of loss to the customer under U.C.C. § 3-406).  Second, § 3-406 only applies in circumstances where the instrument has actually been paid, as opposed to here, where the check was returned.  *See Kevin Kerveng Tung, P.C. v. JP Morgan Chase & Co. (Tung I)*, No. 11885/2011, 2011 WL 6989895, at *4 (N.Y. Sup. Ct. Oct. 28, 2011).

silent as to any allegation regarding PNC's receipt or return of the check.  And in fact, Plaintiff cannot in good faith make such an allegation, as it would simply have no factual basis whatsoever.

New York courts have encountered claims nearly identical to those advanced by Plaintiff against PNC and have held that they were insufficient to establish liability.  In *Greenburg, Trager & Herbst, LLP v. HSBC Bank USA*, the plaintiff, also a law firm, received a Citibank check for $197,750 from a prospective client that it deposited into its account at HSBC and, after receiving a provisional credit, wire-transferred the full amount of the check, less its $10,000 retainer, to an account in Hong Kong pursuant to instructions from its "client."  *Greenberg*, 958 N.E.2d at 79-80.  When Citibank received the check from the Federal Reserve (who had received it from HSBC), it determined that it was counterfeit and returned it without payment to the Federal Reserve, who then notified HSBC, which in turn notified the plaintiff and revoked the provisional credit.  *Id.*  The firm brought suit against Citibank seeking to recover the amount of the transferred funds, alleging that it was negligent "in breaching its obligation to implement effective procedures for detecting counterfeit checks."  *Id.* at 81-82.  In upholding summary judgment dismissing plaintiff's claims, the New York Court of Appeals ruled that, even though Citibank took no steps to determine if the check was counterfeit prior to returning it to the Federal Reserve, because it had returned the check before the expiration of its midnight deadline, it had not breached any duty owed to plaintiff.  *Id.* at 83 ("It is uncontroverted that Citibank returned the check within its midnight deadline.  Because [plaintiff] cannot establish any duty owing from Citibank that was breached, [plaintiff's] claims against Citibank were properly dismissed.").

An almost identical series of events occurred in *Kevin Kerveng Tung, P.C. v. JP Morgan Chase & Co.*. There, the plaintiff law firm received an instrument purporting to be a JP Morgan Chase Bank, N.A. ("Chase") cashier's check – much like the PNC cashier's check at issue here – for $295,500, which it deposited in its account with Citibank on January 6, 2011. *Tung I*, 2011 WL 6989895, at *1.  After wire-transferring $275,250 from its account to a third-party, the firm became suspicious that the cashier's check was forged and contacted Chase regarding the check on January 9, 2011, at which time Chase informed it that the check was forged or counterfeit. *Id.* The complaint alleged that on January 12, 2011, Chase dishonored payment of the check and returned it to plaintiff, although the wire-transfer had already been processed. *Id.*  Plaintiff then brought suit against Chase seeking to recover the full amount of the check, alleging that it was negligent in "failing to safeguard [its] cashier's checks" and "failing to inform the public that forged or counterfeit checks bearing the [defendant's] name[] were being circulated throughout the banking system." *Tung II*, 963 N.Y.S.2d at 147.

The trial court, applying *Greenberg*, granted Chase's motion to dismiss, holding that despite alleging that Chase did not dishonor and return the cashier's check until January 12, 2011, even though it had knowledge that the check was counterfeit on January 9, 2011, the complaint "[did] not state when Chase actually was in receipt of the subject check" and therefore the allegations were "insufficient to state a claim for negligence, as [they did] not allege that Chase received the subject check prior to January 12, 2011 and failed to act before the midnight deadline." *Tung I*, 2011 WL 6989895, at *4.  In upholding the dismissal, the Second Department reiterated the reasoning of *Greenberg*, finding that because "the complaint failed to allege that, upon [defendant's] failure to pay the check, [it] breached [its] duty to either return the check or

9

send notice of dishonor," the Supreme Court properly granted the motion to dismiss plaintiff's negligence claims. *Tung II*, 963 N.Y.S.2d at 148.

As in *Tung*, Plaintiff's Complaint does not – an cannot – allege that PNC breached its duty to timely return the check after determining that it was fraudulent. Plaintiff makes a variety of far-flung allegations about PNC's duty to prevent its checks from being stolen and forged and its failure to warn the public about an apparent "epidemic" of counterfeit PNC checks. The allegations – which are wholly unsupported – simply do not give rise to a cause of action against PNC. *See Tung I*, 2011 WL 6989895, at *5 ("[C]ontrary to plaintiff's assertion, [defendant banks] had no duty to disclose to plaintiff that it may encounter counterfeit cashier checks."). Indeed, the Complaint falls well short of even the claims in *Tung*, which were dismissed on the pleadings despite allegations that the payor bank had knowledge that the check at issue was counterfeit three days prior to when it was returned. *See id.* at *4.

Plaintiff cannot overcome the fact that the only duty PNC even conceivably owed to it as a noncustomer depositor was to pay or return the check at issue prior to midnight on the day following receipt of the check from Citibank. *Greenberg*, 958 N.E.2d at 83; *Tung II*, 963 N.Y.S.2d at 148. Because Plaintiff is simply unable to make any factual claim that even approaches an allegation that PNC breached this duty, its Complaint against PNC must be dismissed with prejudice. *See Tzaras*, 2003 WL 470611, at *6 (granting motion to dismiss negligence claims where no duty to plaintiff was alleged, because "[e]ven if all of the facts that plaintiff alleges were proved at trial, plaintiff would still fail to make out an essential element of negligence required under New York law").

## B.   THE COMPLAINT PROVIDES NO ALLEGATIONS TO SUPPORT AN AIDING AND ABETTING CLAIM AGAINST PNC

When construed in the most generous light, Plaintiff appears also to allege that PNC "enabled, aided and abutted [sic], contributed to, or caused" the fraud perpetrated on Plaintiff by its purported client. Compl. ¶ 48. However, at no point does the Complaint successfully allege the requirements necessary to state an aiding and abetting claim against PNC.[5]   A plaintiff bringing an aiding and abetting claim must "establish the existence of a violation by the primary wrongdoer, knowledge of this violation by the aider and abettor and proof that the aider and abettor substantially assisted in the primary wrong." *Renner v. Chase Manhattan Bank, N.A.*, 85 F. App'x 782, 784 (2d Cir. 2004).   Constructive knowledge of the underlying fraud is insufficient to state a claim, rather, "New York courts require that the alleged abettor have *actual* knowledge of the primary wrong." *Id.* (emphasis in original) (citation omitted).

Assuming that Plaintiff has successfully alleged an underlying fraud, it simply has not pled that PNC had actual knowledge of the fraud or that it substantially assisted in its commission.   Again interpreting the Complaint in the most favorable light, it appears to allege only that PNC aided and abetted the underlying fraud by (i) failing to "implement effective mechanisms" to prevent its cashier's checks from being stolen or forged and (ii) not warning the

---

[5]   Plaintiff also claims – with no support – that it was PNC's "intention to conceal the information that is necessary to protect its customers" by "intentionally" failing to disclose the alleged existence of a multitude of counterfeit PNC cashier's checks. Compl. ¶¶ 25, 60. To the extent this is understood to be an allegation of fraud, the Complaint fails to meet the requirements of Federal Rules of Civil Procedure 8(a) and 9(b) and the basic elements of pleading a fraud claim, as it has not alleged that PNC made a statement or omission with the intent to deceive Plaintiff. *See Cruz*, 855 F. Supp. 2d at 176 (New York requires that an alleged omission be made "for the purpose of inducing the other party to rely upon it"). While intent to deceive can be demonstrated by a showing of recklessness, such conduct must represent "an extreme departure from the standards of ordinary care." *Stephenson v. PricewaterhouseCoopers, LLP*, 482 F. App'x 618, 623 (2d Cir. 2012) (quotation and citation omitted).   As discussed herein, Plaintiff has not demonstrated that PNC departed from any duty of ordinary care. *See supra* Section A; *Greenberg*, 958 N.E.2d at 86 (noting that a bank can ensure that a standard of ordinary care is met by acting in accordance with general banking rules).

11

general public that "an unidentified person" was forging PNC cashier's checks and that there was an "epidemic" of forged and counterfeit PNC bank instruments. Compl. ¶¶ 24-25, 46-47. As an initial matter, this does not approach the specificity required by 9(b), and Plaintiff's claims should be dismissed on that ground alone. *See Lerner*, 459 F.3d at 292-93.

The requirements of Rule 9(b) notwithstanding, these allegations are simply insufficient to demonstrate that PNC had actual knowledge of the underlying fraud or that it substantially assisted Plaintiff's client in carrying out the scheme. First, Plaintiff does not support its conclusory statements with any facts suggesting that PNC knew its cashier's checks were being forged. *See Kaufman v. Cohen*, 760 N.Y.S.2d 157, 169-70 (N.Y. App. Div. 2003) (upholding dismissal of an aiding and abetting claim where there were "no facts in the complaint from which it could be inferred that the . . . defendants had actual knowledge" of the wrong, only "conclusory allegation[s]"). Second, even if PNC had some generalized knowledge that its cashier's checks were subject to theft and forgery, it would still not be enough to successfully allege actual knowledge of the specific fraud in this case. *See Lerner*, 459 F.3d at 294 ("red flags" such as overdrawn accounts and dishonored checks, which might have been sufficient to place defendant bank on notice of "some impropriety," did "not create a strong inference of actual knowledge of . . . theft"). Indeed, as the Court of Appeals noted in *Greenberg*, it was not PNC, but rather Plaintiff – as the party that had the actual relationship with the perpetrator of the fraud – which "was in the best position to guard against the risk of a counterfeit check by knowing its 'client.'" *Greenberg*, 958 N.E.2d at 86 (quotation and citation omitted).

Plaintiff also fails to allege that PNC substantially assisted in the commission of the underlying fraud. New York courts hold that "[s]ubstantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so." *Lerner*, 459 F.3d at

295 (quotation and citation omitted). However, any inaction on the part of a defendant constitutes substantial assistance "only when a defendant owes a fiduciary duty directly to the plaintiff." *Kolbeck v. LIT Am., Inc.*, 939 F. Supp. 240, 247 (S.D.N.Y. 1996), *aff'd* 152 F.3d 918 (2d Cir. 1998); *see also Lerner*, 459 F.3d at 295. Even assuming that Plaintiff has sufficiently demonstrated that PNC's alleged failure to implement procedures to guard against fraud and to warn the public of such fraud contributed to the underlying wrong, Plaintiff's aiding and abetting claim must still be dismissed because PNC did not owe any duty – let alone a fiduciary duty – to a noncustomer such as Plaintiff. *See supra* Section A.1 at n.3; *Lerner*, 459 F.3d at 286 (acknowledging that "a bank has no duty to customers of other banks") (quotation and citation omitted).

## **CONCLUSION**

For all of the reasons stated above, PNC respectfully requests that Plaintiff's claims against PNC be dismissed in their entirety with prejudice.

Dated: New York, New York
September 18, 2015

By: _____
Noreen A. Kelly
Aaron F. Jaroff
McGuireWoods LLP
1345 Avenue of the Americas, 7th Floor
New York, New York 10105-0106
(212) 548-2100
nkelly@mcguirewoods.com
ajaroff@mcguirewoods.com

*Attorneys for Defendant PNC Bank, N.A.*