UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LAW OFFICES OF OLIVER ZHOU,

Plaintiff,

- against -

CITI BANK, N.A., and
PNC BANK, N.A.

Defendants.

Case No.: 15-CV-5266 (EA)

# MEMORANDUM OF LAW OF CITIBANK, N.A. IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

**ZEICHNER ELLMAN & KRAUSE LLP**
Attorneys for Defendant
1211 Avenue of Americas
New York, New York 10036
Telephone: (212) 223-0400

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

PRELIMINARY STATEMENT .......... 2

PROCEDURAL POSTURE .......... 3

THE ALLEGATIONS IN THE COMPLAINT .......... 5

THE GOVERNING CLIENT MANUAL PROVISIONS .......... 6

ARGUMENT .......... 8

POINT I THE STANDARD FOR A MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO FED. R. CIV. P. §12(B)(6) .......... 8

POINT II PLAINTIFF DOES NOT, AND CANNOT ALLEGE ANY FACTS ON WHICH HE MAY SUCCESFULLY RELY BECAUSE BOTH AS A MATTER OF LAW AND UNDER THE CLIENT MANUAL CITIBANK OWED HIM NO DUTY TO DISCOVER THE COUNTERFEIT CHECK AND THE RISK OF LOSS REMAINED WITH HIM .......... 9

POINT III PLAINTIFF FAILS TO AND CANNOT STATE A CLAIM FOR NEGLIGENCE .......... 14

POINT IV PLAINTIFF RECKLESSLY IGNORED RED FLAGS THAT SHOULD HAVE CAUSED HIM TO RECOGNIZE HE WAS BEING DEFRAUDED .......... 15

CONCLUSION .......... 17

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ashcroft v. Iqbal*,
*556 U.S. 662, 129 S. Ct. 1937 (2009)* ....................8

*Bell Atlantic v. Twombly*,
*550 U.S. 544, 127 S. Ct. 1955 (2007)* ....................8

*Bouquet Brands v. Citibank, N.A.*,
*97 A.D.2d 936, 470 N.Y.S.2d 733 (3rd Dep't 1983)* ....................15

*Calisch Assocs., Inc. v. Mfrs. Hanover Trust Co.*,
*151 A.D.2d 446, 542 N.Y.S.2d 644 (1st Dep't 1989)* ....................15

*County of Suffolk v. Long Island Lighting Co.*,
*728 F.2d 52 (2d Cir. 1984)* ....................14

*Dixon Laukitis & Downing, P.C. v. Busey Bank*,
*993 N.E.2d 580 (Ill. Ct. App 2013)* ....................13

*Fischer & Mandell LLP v. Citibank, N.A.*,
*632 F.3d 793 (2d Cir. 2011)* .................... passim

*Greenberg, Trager & Herbst, LLP v. HSBC Bank USA*,
*17 N.Y.3d 565 (2011)* .................... passim

*Gusmao v. GMT Group, Inc.*,
*No. 06 Civ. 5113 (GEL), 2008 U.S. Dist. LEXIS 58462 (S.D.N.Y. August 1, 2008)* ....................14

*Kevin Kerveng Tung, P.C. v JP Morgan Chase & Co.*,
*943 N.Y.S.2d 792 (Sup. Ct., Queens Co. 2011), aff'd, 105 A.D.3d 709, 963 N.Y.S.2d 145 (2d Dept. 2013)* ....................13

*Luxonomy Cars, Inc. v. Citibank, N.A.*,
*65 A.D.2d 549, 408 N.Y.S.2d 951 (2d Dep't 1978)* ....................14

*Margot J. Garant, Inc. v. Suffolk County Nat'l Bank*,
*2015 N.Y. Slip Op. 50119(U) (Sup. Ct., Nassau Co., February 11, 2015)* ....................12

*Simmons, Morris & Carrol, LLC v. Capital One, N.A.*,
*144 So.3d 1207 (La. Ct. App. 2014)* ....................13

*Stella Flour & Feed Corp. v. Nat'l Bank of New York*,
*285 A.D.2d 182, 136 N.Y.S.2d 139 (1st Dep't 1954), aff'd, 308 N.Y. 1023 (1955)* ....................14

*Torcik v. Chase Manhattan Bank, Inc.*,
*No. 02-CV-5994 (CB), 2005 U.S. Dist. LEXIS 19595 (E.D.N.Y. September 7, 2005)*............14

**STATUTES**

N.Y.U.C.C. § 4-212(1)........................................................................................9, 10

N.Y.U.C.C. § 4-213 ............................................................................................10

The New York Commercial Law "Goldbook," 2015 Edition ......................................15

**OTHER AUTHORITIES**

*Barkley Clark & Barbara Clark, 1 The Law of Bank Deposits, Collections and Credit Cards ¶ 10.02[1] (2009)*.............................................................................15

Fed. R. Civ. P. 12(b)(6)..........................................................................................8

## PRELIMINARY STATEMENT

Defendant Citibank, N.A. submits this memorandum in support of its motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Plaintiff is an attorney who recklessly ensnared himself in an Internet check fraud scam by failing to perform any legitimate due diligence to know his client. Having been scammed by a non-party fraudster, plaintiff seeks to make Citibank a guarantor of the integrity of what he now understands to be a counterfeit official check. Plaintiff permitted himself to be victimized by a purported "client" he did not know, did not investigate, and whom he now alleges to be a fraudster. At this fraudster's direction, plaintiff (i) deposited what he claimed to be an official check to his law firm IOLA attorney trust account, for which Citibank gave him a provisional credit, and almost immediately thereafter, (ii) instructed Citibank to send a wire transfer in an amount equal to the bulk of that deposit to a foreign account he understood to be maintained by the fraudster. After Citibank honored plaintiff's wire instructions, the payor bank, defendant PNC Bank, N.A. returned the check unpaid because it was counterfeit. Pursuant to its statutory and contractual rights Citibank thus reversed the provisional credit for which plaintiff now seeks payment in the same amount. In doing so, plaintiff impermissibly seeks to shift the loss caused by his reckless conduct to defendants in contravention of unequivocal legal authority.

Plaintiff's position is contrary to and explicitly belied by well-established, controlling law set forth in *Greenberg, Trager & Herbst, LLP v. HSBC Bank USA and Fischer & Mandell LLP v. Citibank, N.A.*, two seminal cases decided by the New York Court of Appeals and the United States Court of Appeals for the Second Circuit, respectively. Each case involved an attempt identical to that here by a lawyer seeking to shift the liability for a loss resulting from the very circumstances presented here. Each court rejected the lawyer's position as unreasonable

as a matter of law because a depositary bank owes no duty to a depositor to act as a guarantor of a deposited item such as the counterfeit check here. The courts found this to be especially true where, as here, the depositor is an experienced attorney, because such an individual is best positioned to prevent the fraud by engaging in the necessary due diligence to know his client. As a matter of law, each court specifically held that the attorney, not the bank, bears the risk of loss until the bank receives *final settlement* for the check from the payor bank. The Court of Appeals and Second Circuit decisions have since been adopted by other courts adjudicating claims by attorneys duped by Internet fraudsters in identical circumstances. Further, both cases recognize that as a matter of law it is unreasonable for an attorney to rely on statements by bank employees that a check is "good," the precise claim on which plaintiff purports to rely here.

The complaint here is clear that plaintiff demonstrably did not know his client and was cavalier in ignoring obvious red flags that would alert a reasonably diligent lawyer that such "client" was a fraudster. It is equally indisputable that Citibank did not receive "final settlement" or "final payment" of the check from defendant PNC Bank, the payor bank.

Because the law is well-established and there are no genuine issues of material fact, Citibank respectfully submits that it is entitled to a prompt dismissal of plaintiff's complaint.

## PROCEDURAL POSTURE

Plaintiff commenced this action by filing a summons and complaint dated May 18, 2015 (the "Complaint") in Supreme Court, New York County on or about June 10, 2015. (copies of the Summons and Complaint are attached as Exhibit A to the accompanying declaration of Barry J. Glickman (the "Glickman Decl.) On June 30, 2015, before Citibank's time to respond to the Complaint expired, Oliver G. Zhou, plaintiff's principal, acknowledged

his consent to an extension of Citibank's time to respond to the Complaint through and including July 31, 2015. On July 7, 2015 defendant PNC Bank, with Citibank's consent, filed a Notice of Removal thereby removing this case to this Court pursuant to 28 U.S.C. §§ 1332, 1348, 1441 and 1446. (A copy of the Notice of Removal is attached as Exhibit B to the Glickman Decl.)

By letter requests dated July 14, 2015 and July 20, 2015, defendant PNC Bank and Citibank respectively sought leave to file motions to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). By memorandum endorsements of such letters respectively dated July 15, 2015 and July 23, 2015 this Court scheduled a pre-motion conference on August 5, 2015 (the "Pre-Motion Conference") and directed plaintiff to respond to the letters, if at all, not later than July 29, 2015. Plaintiff failed to respond to either letter. Rather, by letter dated July 28, 2015 plaintiff effectively sought leave of this Court to file a motion to remand the case to the New York State Supreme Court.

At the Pre-Motion Conference each party was given a full and fair opportunity to be heard in connection with its pending application, following which this Court permitted Citibank and PNC Bank to file motions to dismiss subject to a court-ordered briefing schedule. At that time, this Court also addressed the position espoused by Mr. Zhou on behalf of plaintiff and commented as follows:

> there appears to be no basis, factual or legal, to move to remand. Obviously, I can't direct you not to make the motion, but the issue that I was stepping around earlier was, Ms. Kelly-Dynega made mention of Rule 11. You are a lawyer and you are under an obligation not to bring frivolous actions. Arguably, the complaint in this case may come close to that, but I wanted not to have to reach that issue because it appears to be so clearly dismissible on 12(b)(6) grounds. A motion to remand would put you in a very different situation, at least before this Court. At that point I would have to consider whether a Rule 11 sanctions might not be appropriate. Again, I leave that up to you. I would encourage you to do the research in the area and perhaps even discuss it with

> counsel for defendant banks, but I would encourage you not to make that motion.

(A copy of the minutes of the Pre-Motion Conference is attached as Exhibit C to the Glickman Decl.) Since then Mr. Zhou has not had any further discussions with Citibank's counsel.

## THE ALLEGATIONS IN THE COMPLAINT[1]

The Complaint contains, *inter alia*, seven causes of action for relief against Citibank in connection with the deposit of the Counterfeit Check, as defined below. The first cause of action alleges breach of contract, though plaintiff does not identify the particular contract to which he refers.[2] The second, third, fourth, fifth, eighth and ninth causes of action either explicitly or implicitly allege negligence or some other, poorly defined tort theory.

Plaintiff alleges that on June 18, 2013 he deposited what purported to be an official check in the face amount of $297,500. (the "Counterfeit Check") into what he defines as "its IOLA Attorney Trust Account with Citi" (the "Account").[3] The Counterfeit Check, which appeared to be an official check of defendant PNC Bank was drawn to the order of plaintiff, and identified the remitter as "Walton Investment Group." One day later, on June 19, 2013, plaintiff alleges that he "wire transferred the sum of $287,450.00 from [the Account] to a third party in

---

[1] For purposes of this motion, Citibank relies on the allegations of plaintiff's complaint. However, Citibank denies the accuracy of such allegations and that it is in any way liable to plaintiff.

[2] Consistent with applicable authority that stands for the proposition that on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) a court may properly consider a contract on which a complaint is based, Citibank has attached to the accompanying declaration of Citibank Vice-President Joan Haslam (the "Haslam Decl.") copies of (i) the signature card for the Account, as defined below (the "Signature Card"), (ii) a CitiBusiness Client Manual effective February 22, 2013 (the "Client Manual") that governs the relationship between Citibank and plaintiff and (iii) a Marketplace Addendum effective March 15, 2013 (the "Marketplace Addendum") that is a supplement to and made a part of the Client Manual as Exhibits A, B and C, respectively. These documents comprise the contract that governs the relationship between Citibank and plaintiff.

[3] As shown on Exhibits 2, 3 and 5 attached to the complaint, the account to which the deposit was made is, in fact, Citibank checking account number xxxx4029 (the "Account"). All but the last four numbers of the account are redacted to ensure customer confidentiality.

Japan according to plaintiff's alleged client's wire instructions" (the "Wire Transfer").[4] Aside from these bare allegations the Complaint provides no context for plaintiff's alleged receipt of the Counterfeit Check or the Wire Transfer.[5] Next, plaintiff alleges that the Counterfeit Check "was already bounced on or about June 20, 2013.[6] Finally, plaintiff alleges that on or after June 24, 2013 he asked Citibank "to recall and cancelled [sic] the [Wire Transfer]."

**THE GOVERNING CLIENT MANUAL PROVISIONS**

For purposes of this motion Citibank does not dispute that at all relevant times it maintained the Account subject to the terms of the Client Manual. The Client Manual states, in relevant part:

> When you open an account, you agree to abide by the rules and regulations governing that account. While some of the information, rules and regulations are contained in this manual, others can be found in the account agreements and other documents we give you at the time you open particular accounts.

(See Client Manual at 5, Haslam Decl. ¶ 7, Exhibit B.)

Significantly, the Client Manual states simply and without ambiguity: "**Returned Checks:** If you deposit a check that is returned to us unpaid, we will deduct the amount of the returned check from your account balance and return the check to you. There will also be a service charge." (See Client Manual at 31, Haslam Decl. ¶ 8, Exhibit B.)

---

[4] Exhibit 3 to the Complaint demonstrates that on June 19, 2013 Mr. Zhou gave Citibank instructions to make the Wire Transfer and Exhibit 5 confirms that Citibank debited the Account and completed the Wire Transfer that same day.

[5] However, in open court at the Pre-Motion Conference plaintiff explained, in sum and substance, that he was retained by Rina Walton, a Japanese citizen whom he never met in connection with a divorce action. Evidently, plaintiff claims, he was, to receive a payment from her husband and that "she want us to deposit money right away, wire the money to her right away." (See Glickman Decl., Exhibit B.)

[6] Exhibit 5 to the complaint includes a Debit Advice dated June 20, 2013 that reveals that "the Deposited item [the Counterfeit Check] was returned unpaid (refer to check" on that date and that the Account was debited in that same amount. This is consistent with a printed summary of transaction on the Account, also included in Exhibit 5, that shows that very debit was posted on June 20.

The Client Manual further provides:

> **Bank's Right to Chargeback:** The Bank's policy on availability of funds from checks that you deposit will not affect your obligation to repay the Bank for any check that you deposit that is not paid, nor will it affect the Bank's right to charge back your account or to obtain reimbursement for any check that is not finally paid for any reason.

(*See* Client Manual at 27, Haslam Decl. ¶ 9, Exhibit B.)

The Account also is governed by the Marketplace Addendum which provides, in relevant part:

> **Check Deposits with Tellers:** Our policy is to generally make funds from checks you deposit to your checking, savings, or money market account available to you immediately on the same Business Day we receive your deposit.

(See Marketplace Addendum at 34, Haslam Decl. ¶ 11, Exhibit C.)

Consistent with the Client manual, the Marketplace Addendum further provides:

> **Bank's Right to Chargeback:** The Bank's policy on availability of funds from checks that you deposit will not affect your obligation to repay the Bank for any check that you deposit that is not paid, nor will it affect the Bank's right to charge back your account or to obtain reimbursement for any check that is not finally paid for any reason.

(See Marketplace Addendum at 37, Haslam Decl. ¶ 12, Exhibit C.)

The Client Manual also addresses a bank customer's opportunity to "cancel" a wire transfer, as plaintiff purports to have attempted. It states, without ambiguity, that a customer may attempt to do so "only if [Citibank] receive[s] [the customer's] instructions before [it has] sent the funds transfer. . . ." Significantly, the Client Manual continues: "In general, after we have sent your funds transfer, you will not be able to cancel or change it unless the beneficiary bank consents to such a request." (See Client Manual at 33, Haslam Decl. ¶ 10, Exhibit B.)

## ARGUMENT

## POINT I

## THE STANDARD FOR A MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO FED. R. CIV. P. §12(B)(6)

Pursuant to Fed. R. Civ. P. 12(b)(6), when determining a motion to dismiss for failure to state a claim the Court must accept as true all factual allegations in the complaint and draw from them all reasonable inferences in a light most favorable to the non-moving party. To survive a motion to dismiss the complaint must contain sufficient facts to state a claim that is plausible on its face. A claim only has facial plausibility when plaintiff pleads facts that allow the court to draw the reasonable inference that defendant is liable for the alleged conduct. *Ashcroft v. Iqbal,* 556 U.S. 662, 678-681, 129 S. Ct. 1937 (2009); *Bell Atlantic v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 556 U.S. at 678. Here, by reason of the abundance of controlling authority -- as discussed in detail later in this memorandum -- that belies any plausible claim against Citibank, plaintiff's complaint must fail as a matter of law.

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits this Court to dismiss a cause of action "for failure to state a claim upon which relief can be granted." In considering such a motion, a court is required to take all facts as alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Securities Investor Protection Corp. v. BDO Seidman, LLP,* 222 F.3d 63, 68 (2d Cir. 2000). While motions to dismiss are generally limited to the four corners of the complaint, a court may consider documents attached to or to which reference is made in a complaint in determining a motion to dismiss. *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). Thus, this Court may consider the

Client Manual, and the Signature card and Marketplace Agreement, in addressing Citibank's motion to dismiss.

For all the reasons set forth below, this Court should dismiss the complaint in its entirety.

## POINT II

## PLAINTIFF DOES NOT, AND CANNOT ALLEGE ANY FACTS ON WHICH HE MAY SUCCESFULLY RELY BECAUSE BOTH AS A MATTER OF LAW AND UNDER THE CLIENT MANUAL CITIBANK OWED HIM NO DUTY TO DISCOVER THE COUNTERFEIT CHECK AND THE RISK OF LOSS REMAINED WITH HIM

There is nothing unusual about the facts of this case or the law necessary to decide it. Indeed, this case is identical to two seminal cases decided by the United States Court of Appeals for the Second Circuit and the New York Court of Appeals. Thus, the governing law is well-established and clear. *See Fischer & Mandell LLP v. Citibank, N.A.*, 632 F.3d 793 (2d Cir. 2011), and *Greenberg, Trager & Herbst, LLP v. HSBC Bank USA*, 17 N.Y.3d 565 (2011). Both cases stand for the unequivocal position that a depositary bank owes no duty to a depositor-attorney to ascertain that a deposited check is counterfeit. Rather, it is clear that as a matter of law the attorney is in the best position to prevent the fraud by knowing his client.

The underpinning of both cases is the Uniform Commercial Code, which provides that a depositor, such as plaintiff here, must bear the risk of loss for a dishonored check. N.Y.U.C.C. § 4-212(1) provides in relevant part:

> If a collecting bank has made provisional settlement with its customer for an item and itself fails by reason of dishonor, suspension of payments by a bank or otherwise to receive a settlement for the item which is or becomes final, the bank may revoke the settlement given by it, charge back the amount of any credit given for the item to its customer's account or obtain a refund from its customer…

Pursuant to N.Y.U.C.C. § 4-213, an item is "finally paid" when the payor bank, *inter alia*, (a) "paid the item in cash," or (b) "settled for the item without reserving a right to revoke the settlement and without having such right under statute, clearing rule or agreement."

Both *Greenberg, Trager* and *Fisher & Mandell* explain that the Uniform Commercial Code explicitly recognizes the propriety of placing the risk of loss with the depositor, in these circumstances the attorney, because he is in the best position to prevent it until the bank receives final settlement for the check:

> Additionally, "the UCC has the objective of promoting certainty and predictability in commercial transactions. By prospectively establishing rules of liability that are generally based not on actual fault but on allocating responsibility to the party best able to prevent the loss by exercise of care, the UCC not only guides commercial behavior but also increases certainty in the marketplace and efficiency in dispute resolution...*The UCC is clear that, until there is final settlement of the check, the risk of loss lies with the depositor.*"

*Greenberg, Trager*, 17 N.Y.3d at 582 (citation omitted) (emphasis added); *Fisher & Mandell*, 632 F.3d at 800-01 (U.C.C. § 4-212(1) permits a bank to charge back the amount of a provisional settlement until it receives final payment of the check).

The facts in *Greenberg, Trager* are especially apposite to the supposed legal theory on which plaintiff purports to rely here. There, at a fraudster's direction, a law firm deposited a $197,750. counterfeit official check for credit to its trust account, and immediately thereafter wired the bulk of the funds to a bank account maintained in Hong Kong. The law firm sued, *inter alia*, the depositary bank (as Citibank is here) alleging that it wired funds in reliance on such bank's assurances that the counterfeit check had "cleared" and the funds were "available." The Court of Appeals squarely rejected the law firm's claim:

> It is clear that the claim [law firm] asserts here cannot succeed, even accepting as true, as we must at this stage of the litigation, [law firm's] version of the conversation with the [bank representative]. [Law firm's] claim is based on the alleged oral statement by the [bank

> representative] that the check had "cleared"--an ambiguous remark that may have been intended to mean only that the amount of the check was available (as indeed it was) in [law firm's] account. Reliance on the statement as assurance that final settlement had occurred was, under the circumstances here, unreasonable as a matter of law.

*Greenberg, Trager*, 17 N.Y.3d at 579-80. The Court of Appeals also rejected the law firm's argument that the bank, not the attorney, was responsible for discovering the check was counterfeit:

> [Law firm] argues that the banks were in the best position to determine that the check was counterfeit. However, the Appellate Division held, and we agree, that "[law firm] was in the best position to guard against the risk of a counterfeit check by knowing its "client." (citation omitted)

Id. at 582.

Similarly, in *Fischer & Mandell*, a law firm deposited to its trust account a $225,351. counterfeit official check it received from a purported "client" whom it claimed it later learned to be a fraudster. The depositary bank provisionally credited the law firm's account in an amount equal to such check. Like here,

- the law firm blindly followed the fraudster's instructions to hastily wire a large portion of the provisionally credited funds to a bank account maintained in South Korea,
- the law firm expected to realize a windfall by retaining the balance as payment for doing no more than accepting the counterfeit check,
- the law firm's claim was predicated upon a fundamental failure to distinguish between "available" funds resulting from a provisional credit and final payment of an item, and
- the purported drawee bank dishonored the check because it was counterfeit.

The law firm depositor in *Fisher & Mandell* advanced precisely the same argument on which plaintiff seeks to rely here. The Second Circuit described the law firm's position as follows:

> when [the depositary bank's] website "gratuitously" declared the funds to be "available" before they had been collected, it implicitly represented that the Check had cleared, thereby misleading [the law firm depositor] into believing that funds were "available for withdrawal as a matter of right" for both wire transfers.

The Second Circuit addressed and categorically rejected this claim clearly, and without ambiguity:

> The district court correctly rejected [law firm's] interpretation and accepted [the bank's]. The Agreements clearly show that while [bank] gave its customers the ability to make use of check proceeds provisionally, that is, before checks cleared, that right was subject to a charge back if a check was returned. We hold, in the circumstances here, that "available" meant only that account balances were "available" for use on a provisional basis, subject to a charge back if a check was returned, and not that the account balance represented collected funds...[allowing] [a]ccess to funds on a provisional basis, subject to the right of a charge-back and refund, [the bank] was merely following a practice that is common in the banking industry.

*Fischer & Mandell*, 632 F.3d at 799-801.

Other courts in New York and nationally have confronted cases with facts and legal arguments identical to those on which plaintiff appears to premise his claims against Citibank, all of which have uniformly rejected law firms' attempts to hold banks liable for the losses incurred as a result of the attorney's dealings with a fraudster. In each instance the court held (i) the attorney is in the best position to discover the counterfeit check by knowing his client, (ii) a bank owes no duty to a depositor to discover the counterfeit check, (iii) it is unreasonable as a matter of law for an attorney to rely upon a statement by the bank that a check had "cleared" or is "good" when sending a wire, and (iv) pursuant to the UCC, the risk of loss remains with the law firm until the bank receives final settlement for the check. *See Margot J. Garant, Inc. v. Suffolk County Nat'l Bank,* 2015 N.Y. Slip Op. 50119(U) (Sup. Ct., Nassau Co., February 11, 2015) (citing *Greenberg, Trager* and *Fisher & Mandell* as controlling in identical circumstances and dismissing an attorney's claim that a bank should be held liable for the

amount of a counterfeit check she deposited to her trust account upon the instruction of a fraudster purporting to be a client); *Kevin Kerveng Tung, P.C. v JP Morgan Chase & Co.*, 943 N.Y.S.2d 792 (Sup. Ct., Queens Co. 2011) (following *Greenberg, Trager* and dismissing attorney's claim against bank holding that plaintiff law firm "was in the best position to protect itself from a fraudulent check-cashing scheme, by knowing its 'client,' and exercising caution before wiring funds from its IOLA Attorney Trust Account. [Law firm] may not shift the losses incurred as a result of the scheme onto the defendant [bank]."), aff'd, 105 A.D.3d 709, 963 N.Y.S.2d 145 (2d Dept. 2013); *Simmons, Morris & Carrol, LLC v. Capital One, N.A.*, 144 So.3d 1207 (La. Ct. App. 2014) (following *Greenberg, Trager* and reversing judgment in favor of law firm because "[law firm] was in the best position to protect itself from the losses suffered at the hands of the scam artists…the bank had no duty to protect [law firm] from the particular harm that it would be the victim of a check scam and that [law firm] was not justified in relying on [bank's] representations regarding the check…"); *Dixon Laukitis & Downing, P.C. v. Busey Bank*, 993 N.E.2d 580 (Ill. Ct. App 2013) (following *Greenberg Trager* in holding that pursuant to both law and the account agreement bank owed no duty to law firm to identify counterfeit check and "the risk of loss remained with the law firm until the check was finally settled with the bank.").

Here, though the Complaint does not allege plaintiff's supposed retention by his "client," it is clear by his concession in open court that he failed both as a matter of law and pursuant to best practices to undertake even the barest minimum of effort to know his client and, instead, hied to send the Wire Transfer without waiting for the most minimal amount of time to pass before depositing the Counterfeit Check. As both the Second Circuit and New York Court of Appeals have held, the Uniform Commercial Code provides that the risk of loss attendant to a counterfeit check remains with the attorney until the bank obtains *final settlement* for the check.

The record is clear and it is indisputable that Citibank never received payment of, and thus final settlement for, the Counterfeit Check. Consistent with this, plaintiff does not allege that Citibank ever claimed to have received final settlement. Therefore, Citibank properly charged back the Account for the amount of the Counterfeit Check pursuant to both law and the Client Manual.

## POINT III

## PLAINTIFF FAILS TO AND CANNOT STATE A CLAIM FOR NEGLIGENCE

Plaintiff's relationship with Citibank, as one between a customer and its bank, is strictly contractual. *See Stella Flour & Feed Corp. v. Nat'l Bank of New York,* 285 A.D.2d 182, 136 N.Y.S.2d 139 (1st Dep't 1954), *aff'd*, 308 N.Y. 1023 (1955); *Luxonomy Cars, Inc. v. Citibank, N.A.*, 65 A.D.2d 549, 408 N.Y.S.2d 951, 954 (2d Dep't 1978) (no cause of action against bank in negligence since there were no duties of bank independent from its contractual duties).

With this legal backdrop, it is clear as a matter of law that plaintiff cannot pursue a claim based on common law negligence against Citibank. Moreover "[u]nder New York law, 'a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated.'" *Torcik v. Chase Manhattan Bank, Inc.*, No. 02-CV-5994 (CB), 2005 U.S. Dist. LEXIS 19595, at *13 (E.D.N.Y. September 7, 2005).

Further, "[a]s the Second Circuit has noted, 'New York law holds that a negligence action seeking recovery for economic loss will not lie.'" *Gusmao v. GMT Group, Inc.*, No. 06 Civ. 5113 (GEL), 2008 U.S. Dist. LEXIS 58462, at *18 (S.D.N.Y. August 1, 2008) (citing *County of Suffolk v. Long Island Lighting Co.*, 728 F.2d 52, 62 (2d Cir. 1984) in which the Second Circuit dismissed plaintiff-appellant's claim for negligence, holding "the fact remains

that this complaint does not allege an injury to person or property and therefore does not state a claim for negligence").

Noted Uniform Commercial Code commentator and treatise writer Barkley Clark opines that the UCC "was designed to provide reliability, uniformity, and certainty as to the rights and liabilities regarding negotiable instruments. Common-law claims would upset the comprehensive loss allocation system provided by Articles 3 and 4 of the UCC." *Barkley Clark & Barbara Clark, 1 The Law of Bank Deposits, Collections and Credit Cards* ¶ 10.02[1] (2009) (citations omitted). Case law is in accord.

Plaintiff's negligence claim is simply not legally viable. As a matter of law, a customer may not sue its bank in negligence based upon an alleged breach of the contractually based bank-customer relationship. *See, e.g., Calisch Assocs., Inc. v. Mfrs. Hanover Trust Co.,* 151 A.D.2d 446, 447, 542 N.Y.S.2d 644, 645 (1st Dep't 1989); *Bouquet Brands v. Citibank, N.A.,* 97 A.D.2d 936, 937, 470 N.Y.S.2d 733, 734 (3rd Dep't 1983).

Accordingly, by the Complaint plaintiff does not and cannot plead a plausible negligence or tort based claim.

## POINT IV

## PLAINTIFF RECKLESSLY IGNORED RED FLAGS THAT SHOULD HAVE CAUSED HIM TO RECOGNIZE HE WAS BEING DEFRAUDED

The scam perpetrated upon plaintiff has become sufficiently prevalent that the 2015 edition of the New York Commercial Law "Goldbook" opens with an article warning attorneys to beware of dealing with clients they do not know. Titled "Counterfeit Check Scams Perpetrated on Attorneys (U.C.C. Article 4)," the article discusses *Greenberg, Trager & Herbst, LLP v. HSBC Bank USA,* 17 N.Y.3d 565 (2011), extensively, and concludes that "an attorney must know enough about a client to be reasonably assured of the client's reliability and probity

before depositing a check received pursuant to the client's instruction and wiring money based on the check at the client's request." [Glickman Decl., **Ex. C**]

Further, the Association of the Bar of the City of New York Committee on Professional Ethics ("Ethics Committee") recently issued a Formal Opinion entitled "Lawyers Who Fall Victim to Internet Scams" warning attorneys to exercise diligence to militate against becoming ensnared in the exact scam to which plaintiff appears to have allowed himself to fall prey by knowing their clients. [Id., **Ex. D**] Consistent with the holdings in *Greenberg, Trager* and *Fisher & Mandell*, the Ethics Committee explains:

> [T]he attorney must exercise reasonable diligence to investigate whether the person is engaged in fraud. In addition, because Internet-based trust account scams may harm other firm clients, a lawyer who receives a request for representation via the Internet has a duty to conduct a reasonable investigation to ascertain whether the person is a legitimate prospective client before accepting the representation.

[Id.] The Ethics Committee continues: "the e-mail sender may provide contracts or other legal documents that look completely genuine; the companies involved in the transaction or litigation may have realistic websites; and the closing or settlement check that the attorney receives may be so authentic looking that even the bank has difficulty detecting that it is fraudulent." [Id.] Noting that "[b]anks have sued attorneys for lost funds caused by counterfeit checks," the Ethics Committee identifies numerous "red flags" alerting an attorney he is dealing with a fraudster.

Based on Mr. Zhou's explanation of the events that culminated in his deposit of the Counterfeit Check and the Wire Transfer it seems that the "red flags" the Ethics Committee identifies were present in plaintiff's dealings with the individual whom he made no effort to identify as a fraudster, all of which plaintiff recklessly chose to ignore.

Plaintiff had ample opportunity to protect himself against precisely the circumstances that caused him to sustain the loss he now seeks to pin on Citibank. Instead, plaintiff chose to be reckless and did not undertake the due diligence necessary for him to know his client or, at a minimum, be suspicious enough not to become ensnared in the scam. The red flags indicating plaintiff was dealing with a fraudster existed for him to discover, yet he turned a blind eye and recklessly ignored them. As *Greenberg, Trager* held, plaintiff cannot shift the risk of loss for the Counterfeit Check to Citibank because he was in the best position to prevent the fraud by knowing his client, and he recklessly abdicated that responsibility.

## CONCLUSION

For all the foregoing reasons Citibank respectfully requests that the Court grant its motion and dismiss the Complaint in its entirety as against Citibank with prejudice, and grant such other relief as is just and proper.

Dated: New York, New York
September 18, 2015

ZEICHNER ELLMAN & KRAUSE LLP

By: ______________________
Barry J. Glickman
Attorneys for Defendant
Citibank, N.A.
1211 Avenue of the Americas
New York, New York 10036
(212) 223-0400