UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

LAW OFFICES OF OLIVER ZHOU,                    Case No.: 15-CV-5266(EA)

                Plaintiff                    **AFFIDAVIT IN OPPOSITION**

    -against-

CITI BANK, N.A.

PNC BANK, N.A.,

             Defendants

-----------------------------------------------------------------X

Plaintiff, Law Offices of Oliver Zhou, by its principal Oliver Zhou, of full age, declares as follows:

1.  This affidavit is made in opposition to the Motion to Dismiss filed by Defendant Citi Bank and PNC Bank on or about September 18, 2015. It is made based upon the personal knowledge of plaintiff and the files maintained at his office.

2.  Plaintiff opened an IOLA Attorney Trust Account at Citi Bank in the name of Oliver G. Zhou on or about May 2, 1996 and has maintained such account since then.

3.  By entertaining, accepting and opening such IOLA Attorney Trust at Citi Bank for plaintiff, Defendant Citi Bank has set up and established contractual banking relationship with plaintiff since then. Plaintiff incorporated its law office as Professional Limited Liability company on or about 2005, while Oliver Zhou remains its sole member.

4.  On or about June 17, 2013, the plaintiff received a PNC Bank Cashier's check numbered 533726 with routing number 071921891 in the amount of $297,500.00

drawn on defendant PNC Bank. Plaintiff deposited this PNC Bank Cashier's Check into its IOLA Attorney Trust Account with Citi on June 18, 2013. Exhibit 1.

5. Defendant Citi's teller Li Bin Chen (herein after "Chen") reviewed the PNC Bank cashier's check and accepted it without using any counterfeit device such as counterfeit pen to check whether the cashier's check was a real or fake one.

6. Defendant Citi's teller Chen further accepted the PNC bank cashier's check without checking and noticing that the routing number 071921891 appearing on the PNC bank cashier's check was apparently wrong since it did not match the correct routing number 031000053 that belongs to the PNC bank.

7. Defendant Citi further accepted the PNC cashier's check by printing the bank receipt stamped with the same day notice of the fund availability on June 18, 2013. Chen did not provide any Notice of Disclosure to plaintiff regarding the Notice of Availability of bank check or cashier's check deposit, warning customers that the cashier's check is also subject to collection, and that the availability notice is just a credit subject to revocation if the cashier's check was bounced for whatever reasons. Exhibit 2.

8. Defendant Citi's legal counsel also admitted that Defendant Citi did not provide plaintiff with such notice, as he stated on or about July 11, 2013 that "Citibank's CitiBusiness Client Manual contains the following section titled 'Returned Checks'...If you would like a copy of the manual, please let me know." Exhibit 3.

9. In Joan Haslam's declaration on behalf of defendant Citi Bank on or about September 17, 2015, she cited many excerpts from the CitiBusiness Client Manual (hereinafter the "Client Manuel") governing the relationship between plaintiff and Citibank to defend the innocence of Defendant Citi Bank. However, this Client Manuel took

effect on February 22, 2013, as claimed by Ms. Haslam, while plaintiff opened his account on or about May 2, 1996. Therefore, this reversed time sequence renders this Client Manuel useless and ineffective upon the plaintiff in the instant matter.

10. More importantly, plaintiff has never received such so-called "Client Manuel" since he opened his account in 1996. Neither is there any acknowledgement from him regarding the receipt of this Client Manuel in the record. In addition, this Manuel has not explained in anyway regarding the legal implication and consequence of the "Notice of Availability."

11. Defendant Citi's clerk Chen could have used anti-fraudulent check detecting pen, but failed to take such approximate measure, like other banks such as Santander, to test and authenticate the depositing cashier's check since Citi is much better equipped to tell and identify the fake cashier's check than the ordinary bank customers such as plaintiff since it is in the normal course of business.

12. A PNC Bank Cashier's check is an instrument issued by the officer of a bank on defendant PNC Bank's own account and is guaranteed by defendant PNC as to the amount of funds. Plaintiff holds such belief, just like any other regular bank customers since it is the basic foundation of the American banking system.

13. On or about June 19, 2013, after checking with the Citi clerk John Huang (hereinafter "Huang") that the PNC Bank Cashier's Check was valid and equivalent to cash, and that Citibank cashier Huang told plaintiff that the money was available since June 18, 2013. Plaintiff detrimentally replied upon the Citi's representation that the money was available and the fund was good. Thereafter the plaintiff then, wire-transferred the

sum of $287,450.00 from its IOLA with defendant Citi to a third party in Japan according to plaintiff's alleged client's wire instruction. Exhibit 4.

14. Defendant Citi failed to notify plaintiff that the availability of amount of deposit of cashier's check in plaintiff's account is subject to collection and revocation and that it did not guarantee the genuineness and truthfulness of the cashier's check and bank checks. Had such warning notice and the same day availability notice were properly given, the real money would not be wired out in this matter.

15. Defendant Citi failed to provide Notice of Disclosure either orally or in writing, regarding the legal ramification of its "Notice of Availability." It failed to notify the plaintiff promptly that the availability notice is not equivalent of cash and it is just a credit supplied by defendant Citi, subject to collection and revocation.

16. Defendant Citi failed its responsibility to exercise its good faith, ordinary and reasonable care in handling its customer's deposit of PNC cashier's check. Had such care been exercised, the fraud would have been discovered. Such negligence of defendant Citi is the direct and proximate cause of any loss amount plaintiff has suffered financially.

17. On or about June 24, 2013, one of plaintiff's clients, Mr. Xie called him stating that the plaintiff's attorney trust check numbered 1796 in the amount of $78,435.00 was dishonored due to insufficient fund in his account. Plaintiff immediately went to Citi to check out this matter. To his surprise, plaintiff found out that the purported PNB bank cashier's check was already bounced on or about June 20, 2013.

18. Even though it was bounced back on June 20, but Citi never notified plaintiff either orally or in writing on June 20, 2013 or the following day and thereafter.

4

19. Plaintiff immediately reported to Citi personnel and was told by Citi that the subject PNC Bank Cashier's Check was in fact a forged or counterfeit instrument.

20. Plaintiff immediately requested Citi to recall and canceled the wire, and Citibank's customer service representative Emmy Yip and Yan Yau, who did so accordingly with wire recall case number CIT130625-005841.

21. Defendant Citi told the plaintiff that its representatives would contact plaintiff regarding further investigation and resolution of the matter. To date, Citi has never contacted or notified plaintiff regarding the result of their investigation, neither did it notify or present to plaintiff any investigation report of the matter.

22. On June 26, 2013, plaintiff received notice in writing from Citi that PNC Check of $297,500.00 was bounced, and it was marked with the words "Return Reason(N) Altered/Fictitious," plus the fee of $12.00 for returned item. Exhibit 5.

23. Upon information and belief, defendant Citi and/or PNB Bank should have had knowledge that forged or counterfeit PNC Bank Cashier's Checks or other PNC Bank instruments had been issued, delivered, or attempted to be deposited.

24. Upon information and belief, defendant Citi and PNC Bank had or should have had knowledge that the routing number and signature featured on the subject forged or counterfeit check was the same as or similar to those of prior instances of unauthorized signatures on other PNC Bank Cashier's Checks or instruments.

25. Despite knowing or should have known the facts that an unidentified person, who was not authorized by defendants Citi and PNC Bank, used the wrong routing number and/or same signature on several PNC Bank Cashier's check, defendants failed to take reasonable and appropriate measures to prevent the same from recurring.

26. Despite knowing or should have known the facts that an unidentified person, who was not authorized by defendant PNC, used the same signature on several PNC Cashier's check, defendant PNB Bank and Citi failed to warn the public and other institutions regarding this hidden danger and failed to take reasonable and appropriate measure to prevent the occurrence of such fraud.

27. Defendant PNC Bank and Citi intentionally failed to disclose the existence of an epidemic of forged and counterfeit PNC bank instruments for the purpose of maintaining a sound corporate image at the expense of the oblivious public.

28. Subsequent to the plaintiff's report to defendant Citi, it has never contacted the plaintiff regarding the investigation of the matter, neither did it notify or present to plaintiff any investigation report of the matter to date yet.

29. Defendant PNC Bank and Citibank made no attempts to investigate the issuance of forged or counterfeit PNC Bank instruments and whether bank checks were missing or stolen from its offices. Defendant PNC Bank made no effort or little effort to root out its check forgery and secure its control over the Cashier's check inventory.

30. Defendant Citi breached contract to its customers by failing to provide its professional service in good faith, ordinary and reasonable manner in discovering fraudulent checks. This breach of contract is the direct and proximate cause contributing to significant monetary losses to plaintiff.

31. Defendant Citi was negligent in failing to use any anti-counterfeit device to detect the fake cashier's check, since it is in a much better position than its regular customers to deal with and handle such type of fraud in its normal course of business operation,

and it is much better equipped to tell and identify the fake routing number of a cashier's check than the ordinary bank customers since it is defective on its face.

32. Defendant Citi misrepresented material fact regarding the date of fund availability, which really is the date of credit availability rather than fund availability. Plaintiff detrimentally relied upon such representation in wiring the funds out. Had Citi stated that the fund availability was the date of collection, the real fund would not be wired out.

33. Defendant Citi's misrepresentation is the direct and proximate factor causing plaintiff to wire out the money on June 19, 2013, thereby causing substantial financial losses to plaintiff since it has detrimentally relied upon its material representation.

34. Defendant Citi was negligent in failing to identify the fake and fraudulent PNC bank cashier's check since it was defective on its face because it did not have the correct routing number.

35. Defendant Citi was negligent in failing its responsibility to exercise good faith, ordinary and reasonable care in handling the collection of plaintiff's check deposit since the subject fraudulent cashier's check was defective in its face, and a trained Citi employee should have knowledge and capacity to identify the correct routing number belonging to PNC bank since it is defective in its face.

36. Defendant Citi was further negligent in failing to train its employees and tellers to identify the fake PNC bank cashier's checks since the defendant Citi and its employees are the professional in the normal course of business operation and they should have such minimum capability to identify the wrong routing number of checks issued by PNC bank and any other fraud of similar nature.

37. Consequently, the defendant Citi enabled, aided and abutted, contributed to, or caused the usage by a third party of a missing or stolen PNC Cashier's Check which the plaintiff deposited into its IOLA account at Citi.

38. Upon information and belief, defendant PNC lost control of or allowed its PNC instruments including PNC Cashier's Checks anywhere from its printing facilities to the branch offices to theft, forgery, or misplacement by its agents.

39. Upon information and belief, the subject PNC Cashier's Check, along with other PNC instruments, were missing or stolen due to defendant PNC's failure to implement effective mechanisms to monitor the whereabouts and status of its instruments or criminal acts of its employees.

40. Consequently, the defendant PNC enabled, aided and abutted, contributed to, or caused the usage by a third party of a missing or stolen PNC Cashier's Check which the plaintiff deposited into its IOLA account at Citi.

41. Plaintiff, Law Offices of Oliver Zhou is a holder in due course of an instrument, a PNC Cashier's Check, which was counterfeit or stolen and its signature within forged.

42. The defendant PNC by its negligence caused or substantially contributed to the making of an unauthorized signature on its forged PNC Cashier's Check.

43. Furthermore, UCC 3-406 provides: "Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course...."

44. Upon information and belief, from time to time, the defendant PNC encountered several incidents of missing, stolen or forged Cashier's Checks and accepted these incidents as normal risks during the course of doing its business.

45. Upon information and belief, the defendant PNC discovered or became aware that a third party was unlawfully signing, making or forging the PNC instruments prior to the occurrence of the instant subject PNC Cashier's Check.

46. Defendant PNC failed to adopt any reasonable and effective procedures for protecting the plaintiff and the public from being misled by a bank draft to enter and remain unimpeached in the stream of commerce, and it was foreseeable that such a draft would come into the hands of the plaintiff in the ordinary course of events on which banking and commerce rely.

47. At no time did defendant PNC ever take any action of any kind by way of informing or notifying the public or other banking institutions of the missing, or forged check or lack of authenticity of instruments before the plaintiff accepted the subject PNC Cashier's Check.

48. Because of the implicit dependence and bond of trust and responsibility inherent in the relationship between a bank and the public, a bank is held for a higher degree of responsibility and a narrower margin of error.

49. As such, defendant PNC had a duty its customers, holders in due course, and to the public, who are prospective depositors of PNC instruments, which PNC breached.

50. But for defendant PNC's negligence and intention to conceal the information that is necessary to protect its customers, holders in due course and the public, the plaintiff

suffered damages in the amount of $295,500.00, plus interest and the costs of private resolution of the matter in an amount to be determined at trial.

52. Defendant Citi failed to investigate the matter after discovery that the plaintiff deposited a forged or counterfeit PNC Cashier's Check, thereby failing to assist in recovery or to mitigate the amount of the plaintiff's loss.

52. Defendant Citi had knowledge of multiple instances of forged or counterfeit instruments, yet intentionally concealed said information necessary to protect the public in order to maintain a positive corporate image and for other purposes.

WHEREFORE, the Plaintiff demands judgment against the Defendants in the sum of $287,450.00 on all causes of action herein, together with the costs and disbursements of this action, reasonable attorneys' fees, and any other relief which this Court deems proper and just.

Dated: New York, New York

October 2, 2015

Oliver Zhou, Esq.
Law Offices of Oliver Zhou
Pro Se Plaintiff

# VERIFICATION

STATE OF NEW YORK        )

                                          ) ss.:

COUNTY OF New York        )

Oliver Zhou, a/k/a Oliver Chou, being duly sworn, deposes and says:

I am the member of the plaintiff in the above captioned action. I have read the foregoing complaint and know the contents thereof; the same is true to my own knowledge except as to those matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true.

                                                                    Oliver Zhou

Sworn to before me on this

2hd day of Oct , 2015.

Notary Public

**PING WANG**
**NOTARY PUBLIC-STATE OF NEW YORK**
**No. 01WA6306658**
**Qualified in Kings County**
**Certificate Filed in New York County**
**My Commission Expires June 23, 2018**