UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

LAW OFFICES OF OLIVER ZHOU,               Case No.: 15-CV-5266(ER)

       Plaintiff

  -against-

CITI BANK, N.A.

PNC BANK, N.A.,

       Defendants

------------------------------------------------------------------X


**MEMORANDUM OF LAW IN OPPOSITION OF DEFENDANTS'**

**MOTION TO DISMISS THE COMPLAINT**

    Law Offices of Oliver Zhou

    Pro Se Plaintiff

    41 Elizabeth Street, Suite 505

    New York, NY 10013

    T: (212) 226-9442

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT…………………………………………..1

STATEMENT OF FACTS…………………………………………….2

ARGEMENT…………………………………………………………5

POINT I    Legal Standard of Motion to Dismiss……………………5

POINT II   Defendant Citibank Breached Its Contract ………………7

POINT III  Defendant Citibank Is Negligent…………………………10

POINT IV  Defendant Citibank Misrepresented Material Fact………14

POINT V   Defendant Citibank Failed to Provide Due Notice………16

POINIT VI    Defendant PNC Bank Is Liable………………………18

CONCLUSION………………………………………………………19

## <u>TABLE OF AUTHORITIE</u>

CASES                                                    Pages

*Apple Records, Inc. v. Capitol Records, Inc.*

529 N.Y.S.3d 279 (1st Dept. 1988)……………………………………....18

*Armstrong v. Manzo*, 380 U.S.545, 550 (1965)………………………….......16

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)…………………..5

*Atkens Constr. of Rome v. Simons*, 284 A.D. 2d 946, 947, 727 N.Y.s.2d 213 94th Dept. 2001)…………………………………………………………………….12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)……………………………………………………………………….6

*Broadway Nat. Bank v. Barton-Russel Corp*, 585 N.Y.S.2d 933, 154 Misc.2d 181 (1992) ……………………………………………………………….6,,9,12

*Charles v. Onondaga Community College*, 69 A.D.2d 144, 146, 418 N.Y.S.2d. 718

(4th Dept.), app. dismissed, 48 N.Y.S.2d 650, 421 N.Y.S.2d 200 (1979)….…18

*Faulke v. New York Consolidated R.R. Co.*

228 N.Y.269, 275, 127 N.E. 237 (1920)…………………………….………9

*Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793 (2011)……………10, 14

*First Investors Corp. v. Liberty Mut.Ins.Co,*

152 F.3d 162, 168 (2d Cir.1998)………………………………………………10

*Frederick Hart & Co. v. Recordgraph Corp.*, 168 F.2d 580, 581 (3d Cir. 1948)..8

*Greene v. Lindsey*, 456 U.S. 444 (1982)……………………………………...16

*Goldberg v. Kelly*, 397 U.S.254, 267-68 (1970)…………………...…………16

*Greenberg, Trager & Herbst, LLP v. HSBC Bank USA*, 17 N.Y.3d 565, 576. 934 N.Y.S.2d 43 (2011)…………………………………………… 11, 12, 14

*Guggenheimer v. Ginzburg*, 43 N.Y.2d 269, 401 N.Y.S.2d 182 (1977)...........7

*Haas. V. Commerce Bank*, 497 F.Supp. 2d 563, 565 (S.D.N.Y.2007)...........14

*Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir.1996).........................10

*Herrington v. Verrilli*, 151 F.Supp.2d 449, 457 (S.D.N.Y.2001)..................10

*Holly v. Pennysaver*, 98 A.D.570, 471 N.Y.S.2d 611 (2nd Dept 1984)...........7

*Jones v. Flowers*, 547 U.S. 220, 235 (2006)......................................16

*JP Morgan Chase Bank, N.A. v. Cohen*, 26 Misc.3d 1215[A], 2009.............15

*JP Morgan Chase Bank, N.A. v. Pinzler*, 28 Misc 3d 1214, 2010............9, 12

*Kevin Kerveng Tung, P.C. v. JP Morgan Chase & Co*, 963 N.Y.S.2d 145, 2013, 105 A.d.3d 709 (2013)...................................................................11

*Lynch v. Bank of America*, N.A., 493 F. Supp.2d. 265 (D.R.I.2007)...........17

*Morgan Stanley & Co. Inc. v. JP Morgan Chase Bank*,

645 F. Supp.2d 248 (2009)................................................6, 9

*Morone v. Morone*, 50 N.Y.2d 481, 484, 429 N.Y.S.2d 592 (1980)..............6

*Mullane v. Central Hanover Trust Co*, 339 U.S. 306, 314 (1950)................16

*Northpark National Bank v. Bankers Trust Co*,
472 F.Supp.524 (S.D.N.Y.1983)..........................................12, 17

*Pivar v. Graduate School of Figurative Art of the New York Academy of Art,* 290 A.d. 2d 212, 735 N.Y.S.2d 522, 24 (1st Dept.2002).....................9

*Putnam Rolling Ladder Co. v. Manufacturer Hanover Trust Co.*, 74 N.Y.S.2d 340, 346,

547 N.Y.S.2d 611, 546 N.E.2d 904 (1989)................................12

*Robinson v. Hanrahan*, 409 U.S. 38 (1974)....................................16

*Rovello v. Orofino Realty Co., Inc.*

40 N.Y.2d 633, 636, 389 N.Y.S.2d 314 (1976)...............................7

*Sanders v. Winship*, 57 N.Y.2d 391, 394, 456 N.Y.S.2d 720,

442 N.E.2d 1231 (1982)……………………………………………………6

*Yak v. Bank Brussels Lambert*, 252 F.3d 127, 130 (2d Cir.2001)………………6

*Zdenek Marek v. Old Navy Apparel Inc.*,

348 F. Supp.2d 275, 279 (S.D.N.Y.2004)…………………………...………6

*219 Broadway Corp. v. Alexander's Inc.*, 46 N.Y.2d 506, 414 N.Y.S.2d 889

(1979)……………………………………………………………..……...7

## STATUTES

12 USC 4001 et seq………………………………………...………………14

12 U.S.C. 4002[b][1]……………………………………..……………...14

UCC §4-301 (1) and §4-302(a)…………………………………………11


UCC §4-103(1)……………………………………………………...12

UCC §4-104(h)……………………………………...………11

UCC§ 201(1)………………………………………………………...9

U.C.C. §4-201………………………………………………………...8

NY UCC §4-202………………………………………………10, 12

UCC §4-212………………………………………………………...14

UCC §3-406………………………………………………………...18

## RULES

Fed.R.Civ.P.12(b)(6)…………………………………………………6

Fed.R.Civ.P. 56(c) (1)(A)…………………………………………7

# PRELIMINARY STATEMENT

Plaintiff, Law Offices of Oliver Zhou, and its principal, Oliver Zhou, submits this Memorandum of law in opposition to the Motion to Dismiss filed by defendants Citibank, N.A. and PNC Bank, N.A. on or about September 18, 2015. According to Judge Edgardo Ramos's order, however, defendants were supposed to submit this Motion to Dismiss on September 14, 2015. Therefore, defendants were late in their filing without judge's prior approval.

At issue in this action is defendants' liability for plaintiff's financial losses incurred when, as a victim of an internet scam, he deposited a counterfeit bank check from a purported client in his Citibank IOLA account on June 18, 2013. Defendant Citibank made the funds available on the same day. Plaintiff wired the money to the purported client at Japan the following day on June 19, 2013. The check was bounced on June 20, 2013, however, defendant Citibank did not notify the plaintiff until June 26, 2013. Plaintiff became aware of the counterfeit check on or about June 24, 2013 when one of his clients called him for an another unrelated payment due to there was insufficient funds in his Citibank account. Plaintiff went to Defendant Citibank immediately to cancel the wire but was not successful, resulting in a loss of $287,450.00.

Plaintiff filed Summons and Complaint against defendants Citibank and PNC Bank on or about June 10, 2015 at Supreme Court, Queens County, State of New York. On July 7, 2015, Defendant PNC Bank filed a Notice of Removal at the Southern District Court of New York. On August 5, 2015, a pre-motion hearing was held and a

filing schedule was ordered. According to the order, the defendants were supposed to file their Motion to Dismiss on September 14, 2015, but their motion was filed on September 18, 2015. Thus defendants were late in their filing of Motion to Dismiss in this matter.

## STATEMENT OF FACTS

Plaintiff opened an IOLA Attorney Trust Account at Citi Bank in the name of Oliver G. Zhou on or about May 2, 1996 and has maintained such account since then. By entertaining, accepting and opening such IOLA Attorney Trust Account at Citi Bank for plaintiff, Defendant Citi Bank has set up and established contractual banking relationship with plaintiff since then. Plaintiff incorporated its law office as Professional Limited Liability company on or about 2005, while Oliver Zhou remains its sole member.

On or about June 17, 2013, the plaintiff received a PNC Bank Cashier's check numbered 533726 with routing number 071921891 in the amount of $297,500.00 drawn on defendant PNC Bank. Plaintiff deposited this PNC Bank Cashier's Check into its IOLA Attorney Trust Account with Citi on June 18, 2013. Exhibit 2. Defendant Citi's teller Li Bin Chen (herein after "Chen") reviewed the PNC Bank cashier's check and accepted it without using any counterfeit device such as counterfeit pen to check whether the cashier's check was a real or fake one. Defendant Citi's teller Chen further accepted the PNC bank cashier's check without checking and noticing that the routing number 071921891 appearing on the PNC bank

cashier's check was apparently wrong since it did not match the correct routing number 031000053 that belongs to the PNC bank.

Defendant Citi's teller Chen further accepted the PNC cashier's check by printing the bank receipt stamped with the same day notice of the fund availability on June 18, 2013. Chen did not provide any Notice of Disclosure to plaintiff regarding the Notice of Availability of bank check or cashier's check deposit, either orally or in writing, warning customers that the cashier's check is also subject to collection, and that the availability notice is just a provisional credit subject to revocation if the cashier's check was bounced for whatever reasons, and that it did not guarantee the genuineness and truthfulness of the cashier's check and bank checks. Had such warning notice and the same day availability notice were properly given, the real money would not be wired out in this matter. Exhibit 2.

Defendant Citi's legal counsel also admitted that Defendant Citi did not provide plaintiff with such notice, as he stated on or about July 11, 2013 that "Citibank's CitiBusiness Client Manual contains the following section titled 'Returned Checks'...If you would like a copy of the manual, please let me know." Exhibit 3.

Defendant Citi's clerk Chen could have used anti-fraudulent check detecting pen, but failed to take such preventive measure, like other banks such as Santander, to test and authenticate the depositing cashier's check since Citi is much better equipped to tell and identify the fake cashier's check than the ordinary bank customers such as plaintiff since it is in the normal course of business.

A PNC Bank Cashier's check is an instrument issued by the officer of a bank on defendant PNC Bank's own account and is guaranteed by defendant PNC as to the amount of funds. Plaintiff holds such belief, just like any other regular bank customers since it is the basic foundation of the American banking system.

On or about June 19, 2013, after checking with the Citi clerk John Huang (hereinafter "Huang") that the PNC Bank Cashier's Check was valid and equivalent to cash, and that Citibank cashier Huang told plaintiff that the money was available since June 18, 2013. Plaintiff detrimentally replied upon the Citi's representation that the money was available and the fund was good. Thereafter the plaintiff then, wire-transferred the sum of $287,450.00 from its IOLA with defendant Citi to a third party in Japan according to plaintiff's alleged client's wire instruction. Exhibit 4.

Defendant Citi failed its responsibility to exercise its good faith, ordinary and reasonable care in handling its customer's deposit of PNC cashier's check. Had such care been exercised, the fraud would have been discovered. Such negligence of defendant Citi is the direct and proximate cause of any loss amount plaintiff has suffered financially.

On or about June 24, 2013, one of plaintiff's clients, Mr. Xie called plaintiff stating that the plaintiff's attorney trust check numbered 1796 in the amount of $78,435.00 was dishonored due to insufficient fund in plaintiff's attorney trust account. Plaintiff immediately went to Citi to check out this matter. To his surprise, plaintiff found out that the purported PNB bank cashier's check was already bounced on or about June 20, 2013.

4

Even though it was bounced back on June 20, but Citi never notified plaintiff either orally or in writing on June 20, 2013 or the following day and thereafter. Plaintiff immediately reported to Citi personnel and was told by Citi that the subject PNC Bank Cashier's Check was in fact a forged or counterfeit instrument. Plaintiff requested at once Citi to recall and canceled the wire, and Citibank's customer service representative Emmy Yip and Yan Yau, who did so accordingly with wire recall case number CIT130625-005841.

Defendant Citi told the plaintiff that its representatives would contact plaintiff regarding further investigation and resolution of the matter. To date, Citi has never contacted or notified plaintiff regarding the result of their investigation, neither did it notify or present to plaintiff any investigation report of the matter.

On or about June 26, 2013, plaintiff received notice in writing from the Citi that the PNC Cashier's Check in the amount of $297,500.00 was bounced, and it was marked with the words "Return Reason(N) Altered/Fictitious," plus the fee of $12.00 for returned item. Exhibit 6.

## ARGUMENTS

## POINT I. Legal Standard of Motion to Dismiss

The United States Supreme Court spelt out the legal standard for a motion to dismiss in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009), i.e., "[A] court considering a motion to dismiss can choose to begin by identifying   pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be

supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Id. at 1950.

For a complaint to survive dismissal under Rule 12(b)(6), the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face. *Morgan Stanley & Co. Inc. v. JP Morgan Chase Bank*, 645 F. Supp.2d 248 (2009); see also *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). [A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not accomplish this task. *Twombly*, 550 U.S. 550, 555 (2007). Therefore, plaintiff must provide not only a well-pleaded complaint, but any written instrument attached to the complaint as an exhibit or any statements or documents incorporated in it by reference. *Zdenek Marek v. Old Navy Apparel Inc.*, 348 F. Supp.2d 275, 279 (S.D.N.Y.2004), *Yak v. Bank Brussels Lambert*, 252 F.3d 127, 130 (2d Cir.2001).

It is also well-established applicable standard in State of New York that the court must assume the truth of the allegations in the pleading and "resolve all inferences which reasonably flow therefrom in favor of the pleading," as pointed out by Judge Diane Lebedeff in her seminar case *Broadway Nat. Bank v. Barton-Russel Corp*, 585 N.Y.S.2d 933, 154 Misc.2d 181 (1992), Citing *Sanders v. Winship*, 57 N.Y.2d 391, 394, 456 N.Y.S.2d 720, 442 N.E.2d 1231 (1982). The court needs to determine simply whether the facts alleged fit within any cognizable legal theory, *Morone v. Morone*, 50 N.Y.2d 481, 484, 429 N.Y.S.2d 592 (1980), and generally not consider whether there

is evidentiary support for the complaint. *Guggenheimer v. Ginzburg*, 43 N.Y.2d 269, 401 N.Y.S.2d 182 (1977); *Holly v. Pennysaver*, 98 A.D.570, 471 N.Y.S.2d 611 (2nd Dept 1984). Indeed, if plaintiff is entitled to a recovery upon any reasonable view of the stated facts, the complaint, as a pleading, is legally sufficient to defeat a motion to dismiss for failure to state a cause of action. *219 Broadway Corp. v. Alexander's Inc.*, 46 N.Y.2d 506, 414 N.Y.S.2d 889 (1979). The affidavits for this type of motion are submitted for a limited purpose only, serving normally to remedy defects in the complaint. *Rovello v. Orofino Realty Co., Inc.* 40 N.Y.2d 633, 636, 389 N.Y.S.2d 314 (1976).

The facts in the present case indicate that plaintiff submitted a well-pleaded complaint with plausible cause of actions, such as breach of contract, negligence, misrepresentation of material facts, and lack of due notice, supported by detailed and specific factual allegations. Moreover, there is serious doubt regarding the existence, applicability, and legality of the so-called the Citibank Client Manuel, which might require necessary discovery. Therefore, defendants' motion to dismiss should be defeated in its entirty.

## POINT II.    Defendant Citibank Breached Its Contract to Its Customers

Defendant Citibank's counsel submitted Citi employee Joan Haslam's Declaration and the Citi Bank Client Manuel to support its motion to dismiss. According to Fed.R.Civ.P. 56(c) (1)(A), "[A] party asserting that a fact cannot be or is genuinely disputed must support the assertion by...citing to particular parts of materials in the

record, including…affidavits or declaration…". Affidavits such as those offered in support of the defendants' motion to dismiss are inappropriate as such a procedural posture. "An affidavit cannot be treated, for purposes of the motion to dismiss, as proof contradictory to well-pleaded facts in the complaint." *Frederick Hart & Co. v. Recordgraph Corp.*, 168 F.2d 580, 581 (3d Cir. 1948).

In Joan Haslam's declaration on behalf of defendant Citi on or about September 17, 2015, she cited many excerpts from the CitiBusiness Client Manual (hereinafter the "Client Manuel") governing the relationship between plaintiff and Citibank to defend the innocence of Defendant Citi Bank. However, this Client Manuel took effect on February 22, 2013, as claimed by Ms. Haslam, while plaintiff opened his account on or about May 2, 1996. Therefore, this Client Manuel has no legal bearing upon the plaintiff in the instant matter.

More importantly, plaintiff never received any so-called Client Manuel from Citibank at that time, neither did Citibank ever deliver and mail it to him anytime thereafter. There is nothing further in the record indicating that plaintiff has ever acknowledged the receipt of such Client Manuel purportedly governing the contractual relationship between Citibank and Plaintiff. Moreover, this Manuel has not explained in anyway regarding the legal implication and consequence of the "Notice of Availability" and other clauses. Therefore, this so-called Client Manuel and its subsequent amendments unilaterally made by defendant Citibank have no legal bearing upon the contractual relationship between plaintiff and defendant Citibank.

The Citi Bank Client Manuel, in pertinent part, states:

"[T]he relationship created between any deposit shall be that of debtor and creditor. No fiduciary or other special relationship exists between us." P10, Client Manuel. However, this characterization of relationship between a bank and customer was categorically rejected by well-settled New York case law. "A debtor-creditor relationship arises only after collection is effected and the item is paid. While the item is in the process of collection, the collecting bank has an agency status, as specifically set for in U.C.C. §4-201. *Broadway Nat. Bank v. Barton-Russel Corp*, 585 N.Y.S.2d 933, 154 Misc.2d 181 (1992). This relationship between plaintiff and defendant Citibank was created based upon the opening and acceptance of a bank account at Citibank. Furthermore, according to UCC§ 201(1), …the collecting bank is an agent of the owner during the collection process. See also *JP Morgan Chase Bank, N.A. v. Pinzler*, 28 Misc 3d 1214, 2010. A collecting bank is bound to exercise ordinary care in "presenting an item or sending it for presentment.: NY UCC §4-202. *Morgan Stanley & Co. Inc. v. JP Morgan Chase Bank*, 645 F. Supp.2d 248 (2009). A collecting bank cannot effectively disclaim a duty to use due care, the need for adherence to sound banking practice, or the obligation to take seasonable action. *Broadway Nat. Bank v. Barton-Russel Corp*, 585 N.Y.S.2d 933, 154 Misc.2d 181, 194 (1992).

This point is further supported by the law of bailments in New York. According to New York law, "bailment" is defined as a "delivery of personal property for some particular purpose, or a mere deposit, upon a contract express or implied, providing that after such purpose has been fulfilled it shall be redelivered to the person who delivered it, or otherwise dealt with according to his directions or kept until he

9

reclaims it, as the case may be. Id. See also *Herrington v. Verrilli*, 151 F.Supp.2d 449, 457 (S.D.N.Y.2001).

"A bailment may be created by operation of law. It is the element of lawful possession, and the duty to account for the thing as the property of another, that creates the bailment, whether such possession results from contract or is otherwise lawfully obtained. It makes no difference whether the thing be instructed to a person by the owner or by another. Taking lawful possession without present intent to appropriate creates a bailment." *Pivar v. Graduate School of Figurative Art of the New York Academy of Art*, 290 A.d. 2d 212, 735 N.Y.S.2d 522, 24 (1st Dept.2002) (citing *Faulke v. New York Consolidated R.R. Co.* 228 N.Y.269, 275, 127 N.E. 237 (1920).

Therefore, there is an expansive contractual relationship between plaintiff and Citibank in the present matter, not merely a debtor-creditor relationship, as unilaterally set and defined by defendant Citibank here.

Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages. *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793 (2011). See also *First Investors Corp. v. Liberty Mut.Ins.Co*, 152 F.3d 162, 168 (2d Cir.1998); *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir.1996). The facts in the present case indicate that plaintiff opened an attorney trust account at Citibank, thereby establishing a contractual relationship between them, and defendant Citibank breached the contract by failing to provide due notice to plaintiff, to detect the fraudulent cashier's check that is defective on its face, and to exercise ordinary and reasonable care, which was the proximate cause of plaintiff's financial damages.

## POINT III      Defendant Citibank Is Negligent

According to New York law,

"To establish a cause of action sounding in negligence, a plaintiff must establish the

existence of a duty on defendant's part to plaintiff, breach of the duty and damages." *Kevin Kerveng Tung, P.C. v. JP Morgan Chase & Co*, 963 N.Y.S.2d 145, 2013, 105 A.d.3d 709 (2013). See also *Greenberg, Trager & Herbst, LLP v. HSBC Bank USA*, 17 N.Y.3d 565, 576. 934 N.Y.S.2d 43 (2011).

The UCC prescribes the duties the various banks owe to a depositor. A collecting bank must use ordinary care in presenting a check or sending a check for presentment, sending notice of dishonor or nonpayment or returning a check, and settling the check when the collecting bank receives final settlement from the payor bank. UCC §4-202[1]. *Greenberg v. HSBC*, 17 N.Y.3d 565, 958 N.E.2d 77, 934 N.Y.S.2d 43 (2011). A collecting bank has until midnight of the next banking day (its "midnight deadline" [UCC §4-104(h)] to take the above actions when receiving a check, notice of dishonor or final settlement of the check. UCC §4-202(2). In other words, whenever a collecting bank receives a check from a depositor or notice or settlement from the payor bank it must act on it by midnight the next banking day.

A payor bank must, by its "midnight deadline", pay the item according to UCC §4-104 (h), pay the item, return the item or send written notice of dishonor or nonpayment. UCC§ 4-301 & §302. Final settlement of a check occurs when the payor bank has paid the item or fails to return the check, or sends written notice of dishonor or nonpayment of the check by its midnight deadline in light of UCC §4-301 (1) and §4-302(a).

The term "ordinary care" is used with its normal tort meaning and not in any special sense relating to bank collection. A customer may prove a bank "lacked ordinary care by presenting any type of proof that the bank failed to act reasonably. *Greenberg v. HSBC*, 17 N.Y.3d 565, 958 N.E.2d 77, 934 N.Y.S.2d 43 (2011), see also

*Putnam Rolling Ladder Co. v. Manufacturer Hanover Trust Co.,* 74 N.Y.2d 340, 346, 547 N.Y.S.2d 611, 546 N.E.2d 904 (1989). Furthermore, UCC Section 4-103(1) states that "[t]he effect of the provisions of this article may be varied by agreement except that no agreement can disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care or can limit the measure of damages for such lack or failure." *Greenberg.* A bank has a duty to exercise ordinary care when dealing with its customers. *Atkens Constr. of Rome v. Simons,* 284 A.D. 2d 946, 947, 727 N.Y.s.2d 213 94th Dept. 2001). Moreover, the breach of duty of ordinary care "is recognized as a proper basis for a negligence claim against a collecting bank…" *JP Morgan Chase Bank, N.A. v. Pinzler, 28 Misc.3d 1214(A) (2010).* See also *Broadway National Bank v. Barton-Russell Corp,* 154 Misc.2d 181, 195-196(Sup Ct. N.Y.Co. 1992). Any portion of an agreement which waives a duty to exercise ordinary care is unenforceable. Id.

In *Northpark National Bank v. Bankers Trust Co,* 472 F.Supp.524 (S.D.N.Y.1983), Judge Whitman Knapp held that a claim could be stated against a collecting bank for failure to advise its customers of the possibility of "notice of dishonor or non-payment" mentioned in U.C.C. 4-202(1)(b), and that a collecting bank may be held accountable in negligence for its own improper actions. See also *Broadway Nat. Bank v. Barton-Russel Corp,* 585 N.Y.S.2d 933, 154 Misc.2d 181, 190 (1992).

Defendant Citi was negligent in failing to identify the fake and fraudulent PNC bank cashier's check since it was defective on its face because it did not have the

correct routing number and the Citi failed to notice this glaring red flag.   Defendant Citi was further negligent in failing its responsibility to exercise good faith, ordinary and reasonable care in handling the collection of plaintiff's check deposit since the subject fraudulent cashier's check was defective in its face, and a trained Citi employee should have knowledge and capacity to identify the correct routing number belonging to PNC bank since it is defective in its face.

Defendant Citi was negligent in failing to use any anti-counterfeit device to detect the fake cashier's check, since it is in a much better position than its regular customers to deal with and handle such type of fraud in its normal course of business operation, and it is much better equipped to tell and identify the fake routing number of a cashier's check than the ordinary bank customers such as plaintiff since it is defective on its face.

In addition, Defendant Citi was further negligent in failing to train its employees and tellers to identify the fake PNC bank cashier's checks since the defendant Citi and its employees are the professional in the normal course of business operation and they should have such minimum capability to identify the wrong routing number of checks issued by PNC bank and any other fraud of similar nature. Consequently, the defendant Citi enabled, aided and abutted, contributed to, or caused the usage by a third party of a missing or stolen PNC Cashier's Check which the plaintiff deposited into its IOLA account at Citi.

Above all, it is plaintiff's position that banks, rather than bank's customers, are in a much better and superior position to detect and prevent the fraudulent banking

activities since banks are in the forefront of their normal and regular business operation dealing with these issues on a daily basis. Defendant's counsel cited *Greenberg, Trager & Herbst, LLP v. HSBC Bank USA*, 17 N.Y.3d 565, 576. 934 N.Y.S.2d 43 (2011) and *Fischer & Mandell LLP v. Citibank, N.A.* 632 F.3d 793 (2011) to support their position, but all these cases are distinguishable from the facts of the case at bar since their counterfeit check is not defective on its face while the facts in the present case showed otherwise. In addition, these cases did not involve the issue of lack of due notice presented in the case at bar. Therefore, these cases will not be able to preclude from other plaintiffs who suffered from damages to sue banks because of the failure of exercise ordinary and reasonable care, of abiding by the sounding banking practice.

## Point IV.  Defendant Citibank Misrepresented Material Fact In this Matter

Pursuant to the Expedited Funds Availability Act (12 USC §4001 et seq), banks are required to make funds form a deposited check available for the depositor's withdrawal within certain short time periods. 12 U.S.C. §4002[b][1]. The purpose of the Act is to provide faster availability of deposited funds" *Haas. V. Commerce Bank*, 497 F.Supp. 2d 563, 565 (S.D.N.Y.2007), notwithstanding the availability is provisional and the collecting bank has the right to charge back the amount if the check is dishonored or the bank fails to receive a settlement for the check. UCC 4-212.

The misrepresentation of the availability of funding by a bank to a customer has been generally found to be insufficient to preclude summary judgment on a charge back claim by a collecting bank against its customer, however, those precedents cannot defeat the negligence claim made by plaintiff, absent the discovery process. *JP Morgan Chase Bank, N.A. v. Cohen*, 26 Misc.3d 1215[A], 2009. In *Cohen*'s case, the court found that it was premature to grant summary judgment in favor of the bank, given the fact that there was no pretrial discovery and the fact-intensive inquiry required to determine if the bank acted negligently. If a summary judgment cannot be granted in *Cohen*'s case, the complaint in the present case should also be able to withstand this Motion to Dismiss, considering the similar nature of these two cases.

In the present case, defendant Citi misrepresented material fact regarding the date of fund availability, which really is the date of credit availability subject to collection, given the fact that it has never given its so-called Client Manuel to plaintiff, nor did it warn plaintiff either orally or in writing, that there might be non-payment or fraudulent cashier's check relating to plaintiff's business dealings with purported clients. Plaintiff is just a regular consumer who believes the soundness of the American banking system, thereby it detrimentally relying upon its representation in wiring the funds out. Had Citi stated that the fund availability was the date of collection, the real fund would not be wired out.

More importantly, the usual banking practice in the United States is that the date of availability for cashier's check is the second day after deposit, such as TD Bank and Santander. However, defendant Citibank provided the same day of availability for

plaintiff in this matter, even if the amount involved was such a large amount of $297.500.00, way over $5,000.00. It is obviously not a sound and reasonable banking practice but it rather showed that defendant Citi failed to exercise its ordinary and reasonable care in handling its customers' funds. Its misrepresentation of the date of availability is the direct and proximate factor causing plaintiff to wire out the money on June 19, 2013, thereby causing substantial financial losses to plaintiff since it has detrimentally relied upon its material representation.

## POINT V Defendant Citibank Failed to Provide Due Notice In This Matter

An elementary and fundamental requirement of due process in any proceeding is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Trust Co*, 339 U.S. 306, 314 (1950). This may include an obligation, upon learning that an attempt at notice has failed, to take "reasonable followup measures" that may be available. *Jones v. Flowers*, 547 U.S. 220, 235 (2006). The notice must be sufficient to enable the recipient to determine what is being proposed and what he must do to prevent the deprivation of his interest. *Goldberg v. Kelly*, 397 U.S.254, 267-68 (1970). Ordinarily, service of the notice must be reasonably structured to assure that the person to whom it is directed receives it. *Armstrong v. Manzo*, 380 U.S.545, 550 (1965), *Robinson v. Hanrahan*, 409 U.S. 38 (1974); *Greene v. Lindsey*, 456 U.S. 444 (1982).

As long as depository institutions comply with its notice provisions, the EFAA does not make banks liable for their customer's checks. Customers of banks, in other words, withdraw money early at their own peril. EFAA requires institutions to make the funds available, but it does not require a bank to effectively become a guarantor of the check in process. *Lynch v. Bank of America*, N.A., 493 F. Supp.2d. 265 (D.R.I.2007). The general practice in this country is that the money will be available next day for cashier's check, but defendant Citibank here made the money available on the same day, even though the check amount is way more than $5,000.00.

Judge Knapp also stated that the requirement of notification would place no undue burden on the collecting bank. All that would be required would be routine instructions that such disparity be automatically referred to a given individual. *Northpark National Bank v. Bankers Trust Co*, 472 F.Supp.524, 535 (S.D.N.Y.1983)

In the present case, defendant Citi failed to notify plaintiff that the availability of amount of deposit of cashier's check in plaintiff's account is subject to collection and revocation and that it did not guarantee the genuineness and truthfulness of the cashier's check and bank checks. Had such warning notice and the same day availability notice were properly given, the real money would not be wired out in this matter. Defendant Citi failed to provide Notice of Disclosure either orally or in writing, regarding the legal ramification of its "Notice of Availability" since it has never provide the so-called Client Manuel to plaintiff from the first day he opened the attorney trust account. More importantly, it is unfair for plaintiff to accept the terms and conditions set forth in this Client Manuel, since it was drafted and imposed

unilaterally by defendant Citibank, given the unequal bargaining power between plaintiff and defendant Citibank.

Defendant Citibank's counsel's claim that plaintiff chose to ignore the red flag and ensnared himself into the trap is self-contradicting statement, and such claim is absolute false and irresponsible. He cited the 2015 edition of the New York Commercial Law "Goodbook" and the Formal Opinion of Ethics Committee were all published in 2015 while the unfortunate event happened in 2013. Therefore, his opinion and statement do not make any common sense, neither do they have any legal bearing upon this matter.

## Point VI   Defendant PNC Is Liable In This Matter

PNC is liable because it is an agent or sub-agent of the owner of the item, UCC §4-201, and there is noncontractual duty existing between plaintiff and defendant PNC bank as a matter of social policy, rather than upon the tortuous conduct. *Apple Records, Inc. v. Capitol Records, Inc.* 529 N.Y.S.3d 279 (1st Dept. 1988).

"A duty extraneous to the contract often exists where the contract accompanies some relation between the parties out of which arises a duty of affirmative care as in cases involving bailor and bailee, public carrier and passenger, innkeeper and guest, lawyer and client, or principal and guest." *Charles v. Onondaga Community College,* 69 A.D.2d 144, 146, 418 N.Y.S.2d. 718 (4th Dept.), app. dismissed, 48 N.Y.S.2d 650, 421 N.Y.S.2d 200 (1979).

In the case at bar, PNC failed to effective guide and monitor the whereabouts and status of its instruments or criminal acts of its employees. Consequently, the

defendant PNC enabled, aided and abetted, contributed to, or caused the usage by a third party of a missing or stolen PNC Cashier's Check which the plaintiff deposited into its IOLA account at Citi, thereby proximately causing substantial damages to plaintiff who is a holder in due course of an instrument.

Furthermore, UCC§3-406 provides: "Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course...."

Because of the implicit dependence and bond of trust and responsibility inherent in the relationship between a bank and the public, a bank is held for a higher degree of responsibility and a narrower margin of error. As such, defendant PNC had a duty its customers, holders in due course, and to the public, who are prospective depositors of PNC instruments, which defendant PNC breached.

## Conclusion

For the foregoing reasons, the Plaintiff respectfully requests a judgment against the defendants in the sum of $287,450.00 on all causes of action herein, together with the costs and disbursements of this action, reasonable attorneys' fees, and any other relief which this Court deems proper and just.

Dated:   New York, New York
        October 2, 2015

                                        Oliver Zhou, Esq.
                                        Pro Se Plaintiff