UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LAW OFFICES OF OLIVER ZHOU, | Case No.:  15-CV-5266 (ER) |
| Plaintiff, | |
| - against - | |
| CITI BANK, N.A., and PNC BANK, N.A. | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW OF CITIBANK, N.A. IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

**ZEICHNER ELLMAN & KRAUSE LLP**
Attorneys for Defendant
1211 Avenue of Americas
New York, New York 10036
Telephone:  (212) 223-0400

## PRELIMINARY STATEMENT

Plaintiff, a practicing attorney, might have been excused from knowing the applicable legal authority governing its claims against Citibank at the time it drafted the complaint.  However, there is no excuse for the meritless position it advances in its opposition to Citibank's motion to dismiss and its cavalier disregard of *Greenberg, Trager & Herbst, LLP v. HSBC Bank USA,* 17 N.Y.3d 565 (2011) and *Fischer & Mandell LLP v. Citibank, N.A.,* 632 F.3d 793 (2d Cir. 2011), the unequivocal and controlling precedent cited by Citibank.  Indeed, the predicament in which plaintiff placed itself by becoming ensnared in an Internet check fraud scam is identical to that addressed by, *inter alia*, the New York Court of Appeals and the United States Court of Appeals for the Second Circuit in their dispositive decisions.

The fundamental premise upon which plaintiff relies is flawed.  First, though plaintiff concedes, as it must, that "[t]he court needs to determine simply whether the facts alleged fit within any cognizable legal theory" (ECF 31.6, p. 11)[1] it ignores the unassailable truth that the facts alleged in the complaint are no different than those on which the controlling cases were decided.  Almost as an afterthought plaintiff meekly speculates that "all these cases are distinguishable from the facts of the case at bar since their counterfeit check is not defective on its face." (ECF 31-6, p. 18.)  As shown in Citibank's main brief and restated in greater detail below, the law in New

---

[1]  Plaintiff's Memorandum of Law in Opposition of Defendants' Motion to Dismiss the Complaint [sic] was not filed as a memorandum of law but, rather, as an exhibit to plaintiff's complaint.  By referring to such document Citibank does not concede that it was properly filed with the Court.

York State and the Second Circuit is clear: a depositary bank owes no duty to a depositor-attorney to ascertain that a deposited check is counterfeit. Thus, it is manifest that plaintiff does not and cannot cite to any cognizable legal theory on which to pursue the complaint.

Next, by its opposition plaintiff makes allegations that are, in fact, belied by documents appended to and, thus, incorporated in the complaint. For example, plaintiff's opposition states that "[e]ven though it was bounced back on June 20, but Citi never notified plaintiff either orally or in writing on June 20, 2013 or the following day and thereafter." (ECF 31-6, p. 10.) The complaint does not seek such relief on such alleged grounds. And for good reason. Exhibit 5 to the complaint includes a Debit Advice dated June 20, 2013 that disclosed definitively that the Counterfeit Check was "returned unpaid" and that the Account was debited in such amount on that date. (ECF 28-1, p. 30.)

Most glaring is plaintiff's failure to identify the contract upon which it purports to pursue a breach of contract claim. Incredibly, it refuses to concede that the Client Manual attached as an exhibit to Citibank's motion is, indeed, that contract. Rather, plaintiff seeks to disclaim its relevance to this action because it "took effect on February 22, 2013... while plaintiff opened his account on or about May 2, 1996." This is a red herring. Attached to the accompanying declaration of Citibank Vice-President Joan Haslam (the "Haslam Suppl. Decl.") is a copy of a Citibank Manual for Business & Professional Customers effective January 1, 1996 (the "Earlier Client Manual") that

provides, *inter alia*, as follows: "Periodically we will issue revisions to this Manual to reflect any changes that may affect our accounts and services.  These revisions will be available in all our branches."  (See Earlier Client Manual on the page containing the Table of Contents, Haslam Suppl Decl. ¶ 4, Exhibit A.)  Thus, to the extent plaintiff seeks to ignore the Client Manual because it became effective in 2013, it is clear that the terms and conditions that appear in the Client Manual governed plaintiff's relationship with Citibank at the time it deposited the Counterfeit Check. As a matter of law and as discussed at length below, to survive a motion to dismiss a breach of contract claim the burden is on plaintiff to disclose specifics concerning such contract. Its failure to do so here is grounds for dismissal of that claim.

Finally, though denominated as a "memorandum of law" conspicuously absent is any law that insulates the complaint from dismissal.  Not surprisingly, plaintiff does not and cannot rely on any cases that overrule, question or even distinguish the controlling authority cited so prominently in Citibank's main brief.   Indeed, as discussed below, as it must plaintiff actually cites those very cases as authoritative on the law, even though it strains to manufacture an argument that they are factually inapposite, which they decidedly are not.  Confronted with such compelling legal authority to warrant dismissal plaintiff resorts to concocting the unbelievable (and false) implication that there presently exists "a counterfeit pen to check whether the [Counterfeit Check] was a real or fake one."  (ECF 31-6, p.7.)  Naturally, a simple Google reveal that there is no such device.  In truth, a "counterfeit pen" is simply "a tool for detecting bad bills and deterring counterfeiters from passing phony currency."

As included in a product description: "Simply make a small mark on U.S. currency. Chemically sensitive ink works instantly. An amber mark passes the test, while a dark brown or black mark means the bill is probably counterfeit. Works on all new design U.S. currency (bills series 1959 and later)."   http://www.amazon.com/Dri-Mark-Counterfeit-Detector-Currency-351B1/dp/B00006IE9P.

For all the foregoing reasons we respectfully submit that each and every one of plaintiff's claims against Citibank is ripe for dismissal in its entirety and with prejudice.

<u>**ARGUMENT**</u>

**POINT I**

**PLAINTIFF FAILS TO PRESENT GROUNDS WARRANTING DENIAL OF CITIBANK'S MOTION TO DISMISS THE COMPLAINT**

Citing to the United States Supreme Court opinion in *Bell Atl. Corp. v. Twombly*, in *ATSI Communs., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 2007 U.S. App. LEXIS 16382, Fed. Sec. L. Rep. (CCH) P94,363 (2d Cir. N.Y. 2007) the United States Court of Appeals for the Second Circuit reaffirmed that "To survive dismissal, the plaintiff must provide the grounds upon which its claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007)   Once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint. Id. at 1969."   Specific to cases alleging a breach of contract, in *Schandler v. New York Life Ins. Co.*, 2011 U.S. Dist. LEXIS 46322, 2011

WL 1642574 (S.D.N.Y. Apr. 26, 2011) District Judge Lawrence M. McKenna held that "Under New York law, a party asserting breach of contract must allege: '(1) a contract; (2) performance by the party seeking recovery; (3) breach of the contract by the other party; and (4) damages attributable to the breach.'" (Citations omitted.) Notably, this is not in dispute as plaintiff concedes this point and relies on *Fischer & Mandell LLP v. Citibank, N.A.,* 632 F.3d 793 (2d Cir. 2011) for this very proposition.

Here, plaintiff fails to satisfy even remotely this burden. To the extent that plaintiff string cites cases relevant to the standard for a motion to dismiss, the cases on which it relies affirm the proposition advanced by Citibank that this Court may consider the Client Manual because, to the extent the complaint is construed to refer to a contract between it and Citibank, such document is "incorporated in it by reference." *See Marek v. Old Navy (Apparel) Inc.*, 348 F. Supp. 2d 275, 2004 U.S. Dist. LEXIS 25314 (S.D.N.Y. 2004); *Yak v. Bank Brussels Lambert*, 252 F.3d 127, 2001 U.S. App. LEXIS 11369 (2d Cir. N.Y. 2001). Equally, the best that plaintiff can argue is the non-objectionable truism that "[t]he court needs to determine simply whether the facts alleged fit within any cognizable legal theory." ((ECF 31-6, p. 11.) Indeed, as discussed in detail in Citibank's main brief both *Fischer & Mandell LLP v. Citibank, N.A., supra,* and *Greenberg, Trager & Herbst, LLP v. HSBC Bank USA,* 17 N.Y.3d 565 (2011) have determined conclusively that even the most liberal interpretation of the allegations made by plaintiff do not fit within any cognizable legal theory.

Indeed, having failed to identify or attach to the complaint the contract it claims to have been breached by Citibank and having been given a second bite at the apple, by its opposition plaintiff still does not provide any grounds for its gratuitous breach of contract claim other than to recast its complaint as an "affidavit in opposition" and restate as if a mantra that "Citi breached contract to its customers by failing to provide its professional service in good faith, ordinary and reasonable manner."  Such blunder buss language is certainly not what the Supreme Court contemplated in *Bell Atl. Corp. v. Twombly*.

## POINT II

### PLAINTIFF FAILS TO REFUTE CITIBANK'S LEGAL ARGUMENTS IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

As set forth in its main brief, the law in both New York State and the Second Circuit is that that a depository bank owes no duty to a depositor-attorney to ascertain that a deposited check is counterfeit.  Rather, it is clear that as a matter of law the attorney is in the best position to prevent the fraud by knowing his client.  *See Fischer & Mandell LLP v. Citibank, N.A.,* 632 F.3d 793 (2d Cir. 2011) and *Greenberg, Trager & Herbst, LLP v. HSBC Bank USA,* 17 N.Y.3d 565 (2011).   Plaintiff's opposition does not and cannot dispute this unassailable legal authority and it fails to cite any authority for the proposition that the risk of loss for a counterfeit check may be shifted from the depositor to the bank prior to the bank receiving final settlement for the check from the drawee bank.  Here, it is undisputed Citibank never received final settlement of the Counterfeit Check.  Rather, it was timely returned unpaid by defendant

PNC Bank.  Thus, the risk of loss remained with plaintiff, and Citibank is entitled to a dismissal.  *See Greenberg, Trager*, 17 N.Y.3d at 582 ("The UCC is clear that, until there is final settlement of the check, the risk of loss lies with the depositor.")

Plaintiff litters its opposition with a litany of meritless arguments designed to divert this Court's attention from the dispositive case law.  None, provides a basis to defeat Citibank's motion.[2] For example, plaintiff expends a great deal of effort addressing the nature of the relationship between it and Citibank, albeit for no apparent reason.  Though plaintiff proclaims that "there is an expansive relationship... not merely a debtor-creditor relationship" (ECF 31-614-15), that is of no consequence for the purposes of this motion.

To the extent that the complaint is construed as alleging negligent misrepresentation, this very issue was addressed by the New York Court of Appeals in *Greenberg Trager* where, as here, the plaintiff-lawyer-depositor unsuccessfully sought to establish that its bank owed it some fiduciary duty.  There the Court of Appeals held without ambiguity as follows:

> the purpose of UCC 4-201 is not to impose a fiduciary duty on a collecting bank. We have interpreted the statute such that the use of the term "agent" means that the item and any inherent risk in that item remains with the depositor and not the collecting bank (see *Hanna v First Natl. Bank of Rochester*, 87 N.Y.2d 107, 119, 661 NE2d 683, 637 NYS2d 953 [1995] ["(a) collecting bank acts as the agent of its customer, and until such time as the collecting

---

[2]  In its desperation to avoid dismissal plaintiff complains that the motions of both Citibank and defendant PNC Bank are untimely.  This is belied by an order dated August 28, 2015 by which this Court established September 18, 2015 as the date on which motions to dismiss were to be filed, not September 14 as plaintiff incorrectly alleges.

> bank receives final payment, the risk of loss continues in the customer, the owner of the item"]; *Long Is. Natl. Bank v Zawada*, 34 A.D.2d 1016, 1017, 312 [85] [51] NYS2d 947 [2d Dept 1970] ["(Section 4-201) operates to keep the risk of loss upon the owner of the item rather than the bank and gives to the depositary bank a right to reimbursement superior to the owner's rights to the proceeds and superior to the rights of the owner's creditors"]).

17 N.Y.3d at 579.  Plaintiff does not and cannot distinguish such dispositive authority.

Significantly, the authority upon which plaintiff relies -- in disputing the nature of the relationship between it and Citibank as debtor-creditor and otherwise -- is inapposite.  *Broadway Nat'l Bank v. Barton-Russell Corp.*, 154 Misc. 2d 181, 585 N.Y.S.2d 933, 1992 N.Y. Misc. LEXIS 239 (Sup. Ct., N.Y. Co. 1992) does not concern the relationship between a bank and its depositor.  So too is plaintiff's reliance on *Northpark Nat'l Bank v. Bankers Trust Co.*, 572 F. Supp. 524, 1983 U.S. Dist. LEXIS 13445, 37 U.C.C. Rep. Serv. (Callaghan) 385 (S.D.N.Y. 1983) misplaced.  There, the claim involved the alleged late return of a check by a drawee/payor bank to a depositary bank.  Here, Citibank's only duty to plaintiff, its depositor, was to charge back the Account in a timely manner.  *See* N.Y.U.C.C 4-212 (1).  As noted above, the Debit Advice dated June 20, 2013 demonstrates conclusively that the Counterfeit Check was "returned unpaid" and that the Account was debited in such amount on that same date. (ECF 28-1, p. 30.)

Equally unavailing to plaintiff's position is *Kevin Kerveng Tung, P.C. v JP Morgan Chase & Co.*, 105 A.D.3d 709, 963 N.Y.S.2d 145, 2013 N.Y. App. Div. LEXIS 2158, 2013 NY Slip Op 2223, 2013 WL 1317007 (2d Dep't 2013).  In fact, it is

yet additional precedent for the relief sought by Citibank here because the court granted defendant banks' motions to dismiss claims made by an attorney whose complaint alleged that he was damaged in a manner identical to that presented by plaintiff here.

Plaintiff's discussion of the Expedited Funds Availability Act is positively irrelevant.  But, to the extent that plaintiff relies on cases that address the EFAA it correctly observes that "[c]ustomers of banks, in other words, withdraw money early at their own peril. EFAA requires institutions to make the funds available, but it does not require a bank to effectively become a guarantor of the check in the process."  (ECF 31-6, p. 21.)  *See, Lynch v. Bank of Am., N.A.*, 493 F. Supp. 2d 265, 2007 U.S. Dist. LEXIS 43214, 34 A.L.R. Fed. 2d 725 (D.R.I. 2007), which is cited in *Haas v. Commerce Bank*, 497 F. Supp. 2d 563, 2007 U.S. Dist. LEXIS 56192 (S.D.N.Y. 2007).

Finally, plaintiff seeks to escape dismissal by claiming that it was not given proper notice of the availability of the funds represented by his deposit of the Counterfeit Check.   This claim strains credulity and is belied by the Transaction Receipt/Funds Availability Notice it attaches to the complaint that states beyond cavil that such funds were "available today."  (ECF 28-1, p. 21.)  Plaintiff's claim that Citibank did not provide it with a copy of the Client Manual and its belief that this somehow impacts upon its understanding of the "legal ramification of its 'Notice of Availability'" is unclear at best.  Suffice it to say that by the Earlier Client Manual "[w]hen opening any account, [plaintiff is] also agreeing to the rules and regulations

8

governing that account."   Indeed, earlier in that same paragraph it states that "[the Earlier Client Manual] provides [plaintiff] with rules and procedures, as well as other useful information about the current business accounts and services available to you at Citibank."   (See Earlier Client Manual on the page containing the Table of Contents, Haslam Suppl Decl. ¶¶ 5-6, Exhibit A.)   It is thus clear that at the time plaintiff signed the Signature Card and opened the Account it agreed to the terms set forth first in the Earlier Client Manual and thereafter in later revisions, including the Client Manual.

Moreover, such effort fails as a matter of law because by accepting the account services and benefits provided by Citibank for a period of seventeen years before it deposited the Counterfeit Check plaintiff led Citibank to believe that it agreed to be bound by the terms of contractual relationship memorialized in, *inter alia*, the Earlier Client Manual and later revisions.   Thus, plaintiff is equitably estopped from denying such agreement.   *See Petereit v. S.B. Thomas, Inc.*, 63 F.3d 1169, 1178 (2nd Cir. 1995) ("regardless of a party's actual intent, if he conducts himself so as to lead the other party reasonably to conclude that he is accepting an offer to contract, acceptance has taken place as a matter of law").

## **CONCLUSION**

For all the foregoing reasons Citibank respectfully requests that the Court grant its motion and dismiss the Complaint in its entirety as against Citibank with prejudice, and grant such other relief as is just and proper.

Dated:    New York, New York
           October 13, 2015

ZEICHNER ELLMAN & KRAUSE LLP

By: _____
    Barry J. Glickman
    Attorneys for Defendant
     Citibank, N.A.
    1211 Avenue of the Americas
    New York, New York 10036
    (212) 223-0400

829446