UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------

LAW OFFICES OF OLIVER ZHOU,

                              Plaintiff,

              - against -

CITIBANK N.A., and
PNC BANK, N.A.,

                              Defendants.

----------------------------------------

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC # _____
DATE FILED:  __3/13/2017__

**OPINION AND ORDER**

15 Civ. 5266 (ER)

Ramos, D.J.:

        The Law Offices of Oliver Zhou ("Plaintiff" or "Zhou") alleges eleven different claims

against Citibank, N.A. ("Citibank" or "Defendant") and PNC Bank, N.A.,[1] for failure to prevent

Plaintiff's losses from what appears to have been a counterfeit check scheme.  Before the Court

is Defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure.

        For the reasons stated below, Defendant's motion is GRANTED.

## I.     FACTUAL BACKGROUND[2]

        Zhou is a lawyer who has maintained an "IOLA Attorney Trust Account" (the

"Account")[3] at Citibank for twenty years.  Amended Compl. ¶ 2.  At the time he opened the

Account, in 1996, Zhou signed a Citibank Signature Card (the "Signature Card") when opening

the Account.  *Id.* at ¶ 2 & Ex. 1.  The Signature Card includes Zhou's signature and the

---

[1] The Court dismissed PNC Bank, N.A. as a party to this action in an Opinion and Order dated May 17, 2016.  Doc. 38.

[2] The following factual background is based on allegations in the Amended Complaint ("Amended Compl."), Doc. 39, which the Court accepts as true for purposes of the instant motion.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

[3] Although the Amended Complaint does not elaborate further, the Court presumes that Plaintiff is referring to the commonplace interest-bearing bank accounts used to fund civil legal services to the indigent.

Account's basic identifying information— including, *inter alia*, its branch number, account number, date of opening, and number of signers.  *Id.*

On June 18, 2013, Plaintiff deposited into the Account a cashier's check displaying PNC Bank's logo and the routing number 071921891 for $297,500 (the "Check") that was given to him by a new purported client.  Amended Compl. at ¶¶ 5–6 & Ex. 5.  He alleges that the teller accepted the check "without examining … to determine whether it was fake or real," and provided Zhou with a bank receipt stamped with a notice of the funds' availability.  *Id.* at ¶¶ 5–7, 8.  The notice was dated June 18, 2013, and stated that $297,500 was "Available Today."  *Id.* at Ex. 7.  Zhou claims that he was not told that the sum "may not be available for immediate withdrawal."  *Id.* at ¶ 9.

The next day, on June 19, 2013, Plaintiff asked John Huang ("Huang"), a Citibank clerk, whether the Check "was valid and equivalent to cash."  *Id.* at ¶ 12.  Huang further confirmed that the money had been available since June 18, 2013.  *Id.*  Later that same day, at the direction of his purported client, Zhou requested a wire transfer of $287,450 from the Account to a third party's account in Japan (the "Transfer").  *Id.* at ¶ 12 & Ex. 8.  On June 20, 2013, PNC Bank returned the Check to Citibank as "Altered/Fictitious."  Consequently, Citibank debited the Account for the $297,500 check and also charged Plaintiff a $12 service fee.  *Id.* at Ex. 9.

On June 24, 2013, one of Plaintiff's other clients notified him that a check Zhou had issued to him had been dishonored due to insufficient funds in the Account.  *Id.* at ¶ 17.  Zhou immediately contacted Citibank and was informed for the first time that PNC Bank had deemed the Check "a forged or counterfeit instrument" and that it would not be honored.  *Id.* at ¶¶ 17, 21.  Zhou requested that the Transfer to the Japan account be cancelled.  *Id.* at ¶ 19.  Although Citibank's representatives told Zhou that they would report back, Plaintiff claims that Citibank

still has not contacted him.  *Id.* at ¶ 20.  He further alleges that the Transfer was never recalled, and that on June 26, 2013, Plaintiff received written notice from Citibank that the Check was returned as "bounced" because it was a counterfeit check.  *Id.*

## II.   PROCEDURAL BACKGROUND

On May 18, 2015, Plaintiff brought an action in the New York County Supreme Court against Citibank and PNC Bank.  Docs. 1–2.  On July 7, 2015, then-defendant PNC Bank filed a Notice of Removal to this Court with Citibank's consent, which was granted on July 8, 2015.  *Id.* Citibank and PNC Bank filed motions to dismiss Plaintiff's initial complaint following a pre-motion conference on September 18, 2015.  Docs. 25–30.  On May 17, 2016, the Court issued an Opinion and Order ("*Zhou I*") dismissing PNC Bank as a party to the instant action while granting Plaintiff leave to amend only his claims for breach of contract and fraudulent concealment against Citibank.  Doc. 38.  Defendant filed the instant motion on August 1, 2016. Doc. 44.

## III.   LEGAL STANDARD

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  However, the Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter…to 'state a claim to relief that is plausible on its face.'"

3

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

Relatedly, a complaint may also be dismissed if it contains claims that were previously dismissed with prejudice.  *Samuels v. N. Telecom, Inc.*, 942 F.2d 834, 836 (2d Cir. 1991) ("A dismissal with prejudice has the effect of a final adjudication on the merits favorable to defendant and bars future suits brought by plaintiff upon the same cause of action.").  In other words, Plaintiff is barred from pleading claims in an Amended Complaint that were asserted in the original complaint and were dismissed by a court.  *Id.*; *see also NBN Broadcasting v. Sheridan Broadcasting Networks*, 105 F.3d 72 (2d Cir. 1997) (finding that res judicata is created by a prior dismissal with prejudice); *Muhammad v. City of Peekskill*, No. 06-CV-1899, 2008 WL 4452355, at *8 n.9 (S.D.N.Y. Sept. 30, 2008) ("[A] dismissal with prejudice causes claim preclusion (res judicata) to attach.").

## IV.   DISCUSSION

Zhou asserts eleven claims against Citibank.  Four of these claims have already been dismissed with prejudice by this Court in its May 17, 2016 Order and will not be reconsidered here.[4]  *See NBN Broadcasting v. Sheridan Broadcasting Networks*, 105 F.3d 72 (2d Cir. 1997) (finding that res judicata bars claims already asserted and addressed by a prior dismissal with

---

[4] The Court already dismissed Plaintiff's sixth ("failure of caring for security") and seventh (mishandling of bank funds transfer) claims with prejudice in its May 17, 2016 Opinion and Order.  *See* Doc. 38.  Though Plaintiff attempts to change the language of his ninth cause of action, "no fair warning notice & confusing and misleading language" primarily sounds in a claim that has already been dismissed with prejudice:  misrepresentation.  Doc. 38.  The same is true of Plaintiff's tenth cause of action:  detrimental reliance.

prejudice); *Muhammad v. City of Peekskill*, No. 06-Civ.-1899 (KMK), 2008 WL 4452355, at *8 n.9 (S.D.N.Y. Sept. 30, 2008) ("[A] dismissal with prejudice causes claim preclusion (res judicata) to attach."). The balance of the claims are for: (1) breach of contract; (2) fraudulent concealment; (3) breach of privity and fiduciary duty; (4) bailment; (5) agency; (6) breach of implied covenant of good faith and fair dealing; and (7) substantive unconscionability. The Court will address each in turn.

### 1. Breach of Contract

"Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Fischer & Mandell, LLP v. Citibank N.A.*, 632 F.3d 793, 799 (2d Cir. 2011) (citations omitted). Citibank claims that Zhou has not alleged sufficient facts to show that Citibank breached any contractual obligation owed to Plaintiff. *See* Memorandum of Law of Citibank, N.A. Doc. 46, at p. 14.

In arguing that Plaintiff's claim should be dismissed, Defendant relies heavily on *Greenberg, Trager & Herbst, LLP v. HSBC Bank USA*, 958 N.E.2d 77 (2011). The facts in *Greenberg* are, sadly, nearly identical to the instant case. In *Greenberg*, a law firm was defrauded by a purported international client seeking legal representation. *Id.* The purported client agreed to pay plaintiff a $10,000 retainer, and informed the law firm that the client's customer, who owed the client money, would be sending plaintiff a check for $197,750. *Id.* at 79. The client instructed the law firm to deposit the check into the law firm's attorney trust account, and then wire $187,750 from that account to the client's account in Hong Kong, keeping the $10,000 retainer. *Id.* The law firm contacted the collecting bank three days after the deposit to ask whether the check had "cleared." The firm was told that "the funds were available." Upon confirmation, the firm wired $187,750 to the purported client that same day.

*Id.* at 80.  Days later, the purported customer's bank ("payor bank"), on whose account the check was allegedly drawn, informed the law firm's bank ("collecting bank") that the check had been dishonored and was being returned as counterfeit.  The law firm's bank then cancelled the $197,750 credit it had made provisionally available to the firm, and the firm was unable to cancel the wire to the Hong Kong account.  The law firm then sued both the collecting bank and the payor bank.  *See Greenberg, Trager & Herbst, LLP v. HSBC Bank USA*, 958 N.E.2d 77, 78–81 (2011).

The New York Supreme Court found that the firm did not have a claim against the collecting bank even after suffering damages from its inability to recover the funds wired to the offshore account, "absent a fiduciary relationship, which does not exist between a bank and its customer." *Greenberg, Trager & Herbst, LLP v. HSBC Bank USA*, 73 A.D.3d 571, 572 (1st Dep't 2010) (citing *Dobroshi v. Bank of Am., N.A.*, 65 Ad.3d. 882, 886 (2009)).  Even if principles of estoppel governed the allocation of loss, the court found that the firm was actually "in the best position to guard against the risk of a counterfeit check by knowing its 'client'." *Id.* The New York Court of Appeals affirmed, and found that the firm could not establish any duty breached by the collecting bank.  *See Greenberg, Trager & Herbst, LLP v. HSBC Bank USA*, 958 N.E.2d 77 (2011).  The court concluded that the firm's reliance on an alleged oral statement that the check had 'cleared' was "unreasonable as a matter of law." *Greenberg, Trager*, 958 N.E.2d at 87.  *See also*, *JPMorgan Chase Bank, N.A. v. Freyberg*, 171 F. Supp. 3d 178 (S.D.N.Y. Mar. 17, 2016) (applying the reasoning in *Greenberg, Trager* to hold that a collecting bank was entitled to charge back the provisional credit awarded to a defrauded attorney's account).

As an initial matter, the parties disagree regarding the governing agreement.  Plaintiff claims that the Signature Card serves as the operative contract.  Amended Compl. ¶¶ 2–3 & Ex. 1.  Defendant claims that there is no governing contract and, at best, the Client Manual and Marketplace Addendum address the obligations owed to Plaintiff.[5]  Declaration of Barry Glickman.  Doc. 45, Ex. E (Client Manual), Ex. F (Addendum).  Defendant contends that when a customer first opens a business account with Citibank they are given a CitiBusiness Client Manual and accompanying Addendum, which can be updated throughout the client's relationship with Citibank.  Declaration of Barry Glickman.  Doc. 45.  Specifically, the Client Manual and Addendum provide clear notice provisions describing the process that Citibank undertakes when it accepts a deposited check, including its process for making the check amount provisionally available to the depositor, and the bank's right to "charge back" the check amount from the depositor's account in the event the check goes unpaid.  *See* Memorandum of Law of Citibank, N.A.  Doc. 30 at 6–7.  Citibank's reliance on the Client Manual and Addendum, whatever its merit, is inappropriate on a motion to dismiss as the documents are not referred to or relied upon by Plaintiff in his Amended Complaint.  In any event, Zhou claims that he never received a CitiBusiness Client Manual or Addendum, a representation that the Court must assume as true for purposes of a motion to dismiss.  Amended Compl. ¶¶ 2–3.[6]

Though it is lamentable that Plaintiff was the apparent victim of a fraudulent scheme, the Court finds that Plaintiff has not met its burden on the breach of contract claim.  The Signature

---

[5] The Client Manual is an informational document given to Citibank clients, which reads in relevant part, that "[w]hen you open an account, you agree to abide by the rules and regulations governing that account.  While some of the information, rules and regulations are contained in this manual, others can be found in the account agreements and other documents we give you at the time you open particular accounts."  *Id.* at Ex. E, at p.5.  The Marketplace Addendum serves as a supplement to the Client Manual.

[6] Citibank also relies on the Expedited Funds Availability Act ("EFA"), 12 U.S.C. § 4001 *et seq.* as governing the obligations owed to Plaintiff.  The EFA requires banks to make funds from a deposited check "available for the depositor's withdrawal within certain short time periods."  12 U.S.C. §§ 4005–4006. This is also true of the New York Uniform Commercial Code ("UCC") § 4-212(b) (allowing a collecting bank to charge back to the client the amount for a dishonored or unsettled check).

Card does not purport to establish a contractual relationship; it simply confirms Plaintiff's identity and does not contain any terms whatsoever. Amended Compl., Ex. 1. Without any terms, allegations of the requisite elements of a contract—offer, acceptance, and consideration— are missing altogether from Plaintiff's Amended Complaint. *Forest Park Pictures v. Universal TV Network, Inc.*, 683 F.3d 424, 432 (2d Cir. 2012); *see also Fischer v. Mandell LLP v. Citibank, N.A.*, 632 F.3d 793 (opining on a breach of contract claim by analyzing the terms of the contract at issue). As such, Plaintiff fails to adequately allege the existence of a contractual relationship. Accordingly, the Court dismisses the breach of contract claim.

### 2. *Fraudulent Concealment*

As discussed in *Zhou I*, to state a claim for fraudulent concealment under New York law, a plaintiff must allege that there was "(1) a duty to disclose material facts; (2) knowledge of material facts by a party bound to make such disclosures; (3) failure to discharge a duty to disclose; (4) scienter; (5) reliance; and (6) damages." *De Sole v. Knoedler Gallery, LLC*, No. 12 Civ. 2313 (PGG), 2015 WL 5773847, at *15 (Sept. 30, 2015) (citation and internal quotation marks omitted); *see also Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 582 (2d Cir. 2005). In addition to the pleading standards required by Rule 8 of the Federal Rules of Civil Procedure, fraudulent concealment claims must also meet the heightened pleading standards set out in Rule 9(b) of the Federal Rules of Civil Procedure. *See Hinds Cty., Miss. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 520 (S.D.N.Y. 2009) ("A claim of fraudulent concealment must be pled with particularity, in accordance with the heightened pleading standards of Fed. R. Civ. P. 9(b).") (citation omitted). To satisfy Rule 9(b), Plaintiff "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "At the pleading stage, under Rule 9(b), a fraud plaintiff may establish a 'strong inference' of scienter,

among other ways, 'by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 177 (2d Cir. 2015) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 291 (2d Cir. 2006)).

Here, similar to the complaint dismissed by *Zhou I*, the Amended Complaint falls well short of the Rule 9(b) standard.   Plaintiff alleges that Citibank "had and should have knowledge of multiple instances of forged or counterfeit instruments, yet intentionally concealed said information from its customers and the general public in order to maintain a positive corporate image at the expense of its customers."  Amended Compl. ¶ 50.  Again, Plaintiff has alleged no facts that would serve to impose on Citibank a duty to disclose knowledge of past instances of forgery to Plaintiff.  No facts are included to demonstrate how the instant case presents a "special circumstance" that obligates such disclosure from Citibank, as Zhou alleges.  Amended Complaint ¶ 49.  *Cf. Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) ("New York recognizes a duty of disclosure by a party to a business transaction in three situations: first, where the party has made a partial or ambiguous statement…; second, when the parties stand in a fiduciary or confidential relationship with each other…; and third, where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge.") (citations and internal quotation marks omitted).  Moreover, Plaintiff's allegations of Citibank's scienter are generic and wholly conclusory, which therefore do not give rise to the "strong inference" required under Rule 9(b).  *See* Amended Compl. at ¶¶ 25–28.  Accordingly, the Court dismisses the fraudulent concealment claim.

### 3. *Breach of Privity & Fiduciary Duty*

Plaintiff alleges that Defendant "owed [plaintiff] privity and [a] fiduciary duty" because it "set up and established professional privity and contractual service agreement with plaintiff." Amended Compl. ¶ 54.  However, it is well settled that a collecting bank, like Citibank, does not have a fiduciary relationship with its accountholders.  *See* UCC § 4-201 (1) (providing in pertinent part, that "prior to the time that a settlement given by a collecting bank for an item is or becomes final . . . the bank is an agent or sub-agent of the owner of the item and any settlement given for the item is provisional."); s*ee also Greenberg, Trager*, 958 N.E.2d at 84 ("The term 'agent' means that the item and any inherent risk in that item remains with the depositor and not the collecting bank."); *Hanna v. First Nat. Bank of Rochester*, 87 N.Y.2d 107, 119 (1995) ("A collecting bank acts as the agent of its customer, and until such time as the collecting bank receives final payment, the risk of loss continues in the customer, the owner of the item."); *JPMorgan Chase Bank, N.A. v. Freyberg*, 171 F. Supp. 3d 178, 184 (S.D.N.Y. Mar. 17, 2016) (same).  Thus, the Court finds that Plaintiff cannot establish that Citibank breached privity or a potential fiduciary duty.  Accordingly, the Court dismisses the breach of privity and fiduciary duty claim.

### 4. *Bailment*

The common law of bailment arises when a chattel is transferred on behalf of the individual who had always retained legal ownership of said property.  *Picard v. JPMorgan Chase Bank & Co. (In re Bernard L. Madoff Inv. Sec. LLC)*, 721 F.3d 54, 72 (2d Cir. 2013) (defining bailment as "a delivery of personalty for some particular purpose, or on mere deposit, upon a contract express or implied, that after the purpose has been fulfilled it will be redelivered to the person who delivered it, or otherwise dealt with according to that person's directions, or

kept until it is reclaimed.") (citing 9 N.Y. Jur. 2d Bailments and Chattel Leases § 1 (West 2013)). Bailment is a "contractual arrangement and, as in any contract, both parties must assent to the relationship." *United States v. $ 79,000 in Account No. 2168050/6749900 at the Bank of N.Y.*, No. 96 Civ. 3493 (MBM), 1996 U.S. Dist. LEXIS 16536, at *1 (S.D.N.Y. Nov. 6, 1996).

Plaintiff alleges that Defendant "breached its bailment duty" by "failing to provide its professional service in good faith, ordinary and reasonable care" in "examining, identifying and discovering fraudulent checks." Amended Compl. ¶ 61.  Plaintiff again relies on the Signature Card as the governing contract.  For the same reasons that the breach of contract claim fails, the Court finds that Plaintiff's reliance on the Signature Card fails to establish a contractual agreement with Defendant.  Accordingly, the Court dismisses the bailment claim.

*5. Agency*

Agency is a "'highly-factual' legal concept" that requires:  (1) "the manifestation by the principal that the agent shall act for him;" (2) "the agent's acceptance of the undertaking;" and (3) "the understanding of the parties that the principal is to be in control of the undertaking." *Cleveland v. Caplaw Enters.*, 448 F.3d 518 (2d Cir. 2006) (citing *Cabrera v. Jakabovitz*, 24 F.3d 372, 385; *see also* Restatement (Second) of Agency § 1 cmt. b (1958)).  An agency cause of action obligates Plaintiff to allege that Citibank failed to "disclose all material facts that come to its knowledge regarding the scope of the agency." *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 480 (2010); *Greenberg, Trager*, 958 N.E.2d at 84.  Here, Plaintiff does not address this required element of his agency claim.  Rather, Zhou merely alleges that CitiBank "set up and established [an] agency professional service agreement with the plaintiff" by "entertaining and accepting the PNC check."  Amended Compl. ¶ 64.

11

In fact, Plaintiff is precluded from alleging that Citibank failed to disclose all material

facts related to the scope of agency.  A collecting bank may charge back provisional credit if a

payor bank rejects the funds, where the collecting bank does not assume risk of any potential

loss. *See* UCC § 4-212; UCC § 4-201, cmt. 4.  Instead, that risk of loss remains with the owner

of the funds.  UCC § 4-212.  Accordingly, the Court dismisses the agency claim.

      6.  *Breach of Implied Covenant of Good Faith and Fair Dealing*[7]

In New York, all contracts "imply a covenant of good faith and fair dealing in the course

of performance," which prevents both parties from doing "anything which will have the effect of

destroying or injuring the right of the other party to receive the fruits of the contract."  *511 W.*

*232nd Owners Corp. v. Jenifer Realty Co.*, 98 N.Y. 2d 144, 153-54 (2002) (internal citations

omitted); *see also Sec. Plans, Inc. v. CUNA Mut. Ins. Soc'y.*, 769 F.3d 807, 817 (2d Cir. 2014).

Section 4-103 (1) of the UCC prevents an agreement from "disclaim[ing] a bank's responsibility

for its own lack of good faith or failure to exercise ordinary care or can limit the measure of

damages for such lack or failure."  Good faith and fair dealing do not impose obligations

"inconsistent with other terms of the contractual relationship," but these duties require Plaintiff

to allege Citibank's failure to fulfill "any promises which a reasonable person in the position of

the promisee would be justified in understanding were included."  UCC § 4-103 (1); *see also*

Restatement (2d) of Contracts § 205 (1981).

      Again, without relying on an express written agreement, Plaintiff contends that Citibank

violated its duty of good faith when it "accepted" the Check without running it through an MICR

---

[7] Defendant claims that Plaintiff's claim is "impermissible" because it is barred by the Court's May 17, 2016 Order. *See* Memorandum of Law of Citibank, N.A. Doc. 46, at p. 4.  This is incorrect.  Plaintiff's breach of implied covenant of good faith and fair dealing derives from Plaintiff's breach of contract claim, which was dismissed *without* prejudice by the Court in its May 17, 2016 Order.  Doc. 38.

encoding machine,[8] examining the Check's routing number, examining the location and address

of the payor bank, or noting the Check's lack of a watermark security feature.  Amended Compl.

¶¶ 7, 32.  However, according to the applicable UCC provision, "[a] collecting bank exercises

ordinary care under subsection (a) by taking proper action before its midnight deadline following

receipt of an item, notice, or settlement."  § 4-202(2)(b).  Here, Plaintiff alleges that when PNC

Bank returned the Check to Defendant on June 20, 2013 as "Altered/Fictitious," Citibank took

immediate action by "revers[ing] the provisional credit" in the Account in the amount of

$297,512.  Amended Compl. ¶ 16 & Ex. 9.  Citibank then notified Plaintiff in writing of the

bounced check just six days later on June 26, 2013.  Amended Compl. ¶ 21.  Because Plaintiff

acknowledges that Defendant met its midnight deadline, the Complaint does not sufficiently

allege that Defendant failed to effectuate its UCC-prescribed duties in good faith.  *See* UCC § 4-

202 (2); UCC § 4-104 (h).  Accordingly, the Court dismisses the breach of good faith and fair

dealing claim.

   7.  *Substantive Unconscionability*

   A finding of substantive unconscionability requires proof that the contract is "so *grossly*

*unreasonable* or unconscionable in the light of the mores and business practices of the time and

place as to be unenforcable [sic] according to its literal terms."  *Nayal v. HIP Network Servs.*

*IPA, Inc.*, 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009) (emphasis added); *see also Ragone*, 585

F.3d at 121-22.  The Court will consider "whether the substance or content of the transaction was

'unreasonably favorable' to one party such that it becomes oppressive or unfairly surprising."

*Schwartzbaum v. Emigrant Mortg. Co.*, No. 09 Civ. 3848 (SCR), 2010 WL 2484116 (S.D.N.Y.

June 10, 2010) (citing *Gillman v. Chase Manhattan Bank N.A.*, 73 N.Y.2d 1, 10-14 (1988)).

---

[8] Although the Amended Complaint does not elaborate further, the Court presumes that Plaintiff is referring to the commonplace banking technology of magnetic ink character recognition code (MICR).

Plaintiff claims "Defendant Citi Bank [sic] set up and established a legal privity relationship of conscionability with the plaintiff."  Amended Compl. ¶ 94.  Plaintiff, however, does not allege any facts whatsoever and cannot garner support for an inference of even the most fundamental elements of this claim.  Importantly, this includes allegations that demonstrate the existence of a contract, which the Court has already found Plaintiff failed to do.  Accordingly, the Court dismisses the substantive unconscionability claim.

## V.   CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED and Plaintiff's Amended Complaint is dismissed with prejudice.

The Clerk of the Court is respectfully directed to terminate the motion, Doc. 44, and to close the case.


It is SO ORDERED.

Dated:   March 10, 2017
         New York, New York


Edgardo Ramos, U.S.D.J.